### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDUCAP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:07-cv-02106 RMC |
| | ) | |
| INTERNAL REVENUE SERVICE | ) | |
| 1111 Constitution Avenue, N.W. | ) | |
| Washington, DC 20224, | ) | |
| | ) | |
| Defendant. | ) | |

## THE INTERNAL REVENUE SERVICE'S MOTION FOR SUMMARY JUDGMENT

Defendant Internal Revenue Service, through undersigned counsel, moves this

Court pursuant to Fed. R. Civ. P. 56, for a judgment in its favor and against plaintiff, as

there are no genuine issues of material fact, and defendant is entitled to judgment as a

matter of law. Specifically, the Internal Revenue Service (the Service) asserts: (1)the

Court lacks subject matter jurisdiction to adjudicate any relief plaintiff seeks beyond the

relief available under the Freedom of Information Act; (2) the Service conducted an

adequate search of its records in response to plaintiff's request for records under the

Freedom of Information Act and (3) the Service properly withheld information

pursuant to 5 U.S.C. § 552(b).

A Memorandum and points of authorities, a Statement of the Internal Revenue

Service of the Material Facts Not in Genuine Dispute Pursuant to Local Rule 7(h), and

the declarations of Patricia Bruce, Bruce Philipson, Carmen M. Banerjee, Maureen

3284456.1

Hardy, Valdine King, and Adrienne Mikolashek, accompany this motion.

The specific relief sought by this motion is dismissal of the complaint with prejudice.

Date:   May 15, 2008.

Respectfully submitted,

*/S/ Carmen M. Banerjee*
CARMEN M. BANERJEE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 307-6423
carmen.m.banerjee@usdoj.gov

Counsel for defendant
INTERNAL REVENUE SERVICE

Of Counsel:

JEFFREY A. TAYLOR
United States Attorney

3284456.1

ARGUMENT

I.  **THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION TO ORDER THE SERVICE TO IDENTIFY EVERY THIRD PARTY CONTACT MADE BY IT IN CONNECTION WITH ITS AUDIT OF EDUCAP.**

EduCap's first item of requested relief is for the Court to: "Order defendant IRS to identify every third party contact made by it in connection with its audit of EduCap." The Secretary of the Treasury's delegate determined, pursuant to 26 U.S.C. § 7602(c)(3)(B), not to release the identity of the third party contacts because they had expressed fear of reprisal. Several statutes prohibit the Court's jurisdiction to adjudicate the relief EduCap seeks under section 7602(c)(3).

A.  **EduCap brought Its Suit Under the FOIA Which Does Not Provide Relief for EduCap's First Item of Relief.**

Under the FOIA, agencies are required to provide records in response to a proper FOIA request. 5 U.S.C. § 552(a)(3)(A). Agencies are not required, however, to answer questions raised in the guise of a FOIA request or engage in doctrinal discussions in response to inquiries. *Hudgins v. IRS*, 620 F. Supp. 19 (D.D.C. 1985), *aff'd*., 808 F. 2d 137 (D.C. Cir. 1987); *DiViao v. Kelley*, 571 F.2d 538, 542 (10th Cir. 1978) EduCap asserts that the Court has jurisdiction and venue under 5 U.S.C. § 552(a)(4)(B). (Compl. ¶¶ 2, 3) EduCap, however, requests as its first item for relief, that the Court "Order defendant IRS to identify every third party contact made by it in connection with its audit of EduCap." (Compl. ¶38(a)) This is a request to identify items and not a request for agency records. Therefore, EduCap's first requested item of relief is outside of the FOIA, and the Court does not have jurisdiction under 5 U.S.C. § 552(a)(4)(B) to

3

*v. Connally*, 343 F. Supp. 495 (M.D. Ala. 1972), *aff'd* 474 F.2d 1185 (5th Cir. 1973). Indeed,

the Anti-Injunction Act's protection against judicial involvement in pre-enforcement

activities includes "activities which are intended to, or may culminate in the assessment

of taxes." *Yamaha*, 779 F. Supp. 610, 613 (*citing Smith v. Rich*, 667 F.2d 1228, 1230 (5th Cir.

1982). The Service's issuance and enforcement of summonses under 26 U.S.C. § 7602 to

aid in its assessment or collection of taxes is such an activity. *Church of World Peace v.*

*I.R.S.*, 715 F.2d 492 (10th Cir. 1983). Similarly, third party contacts the Service makes

informally or through summons as during its investigation into a taxpayer's tax

liability, and its determination to not disclose these contacts, are activities that may

ultimately end in its assessment of taxes. Sections 7602(a), (c)(2), (c)(3) state, in relevant

part:

> (a) **Authority to Summon, etc.–** For the purpose of ascertaining the correctness of
> any return, making a return where none has been make, *determining the liability* of
> any person for an internal revenue tax ... or *collecting any such liability,* the
> Secretary is authorized- (1) To *examine* any books, papers, records, *or other data*
> which may be relevant or material to such inquiry."
> ******      ********
> **(c) Notice of contact of third parties.–**
> (2) NOTICE OF SPECIFIC CONTACTS.– The Secretary shall periodically provide
> to a taxpayer a record of persons contacted during such period by the Secretary
> with respect to the *determination or collection* of the *tax liability* of such taxpayer.
> Such record shall also be provided upon request of the taxpayer...
> (3) EXCEPTIONS.– this subsection *shall* not apply--
> > (B) if the Secretary *determines* for good cause shown that .... such notice
> > *may* involve reprisal against *any* person

26 U.S.C. § 7602(a), (c) (emphasis added). The language in sub-section 7602(c), the

provision governing when the Secretary shall not disclose the identity of the third party

contacts made- *"with respect to the determination or collection of the tax liability,"* closely

3283014.1

resembles the language in the Anti-Injunction Act statute- "no suit for the purpose of restraining the *assessment or collection of any tax.*" Clearly, pre-enforcement determinations about third party contacts made under section 7602(c)(3)(B) are foreclosed from judicial review under the Anti-Injunction Act. The Supreme Court has held that a taxpayer's challenge to a tax liability should be brought to the court in the form of a suit for refund, as opposed to a premature injunction action. *Bob Jones University v. Simon,* 416 U.S. at 736. Therefore, judicial review of determinations the Secretary makes under sub-section 7602(c)(3)(B) are prohibited because it will interfere with the Service's pre-enforcement activities.

To sustain subject matter jurisdiction for the Court under the Anti-Injunction Act's exception, a plaintiff must show that: (1) it is clear that under no circumstances could the Government ultimately prevail; <u>and</u> (2) equity jurisdiction otherwise exists due to the threat of irreparable injury. *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7 ((1962); *Yamaha Motor Corp. v. United States of Am.,* 779 F. Supp. 610, 613 (D.D.C. 1991)). As to the equity jurisdiction element, the Supreme Court has analyzed: "The Act was written against the background of general equitable principles disfavoring the issuance of federal injunctions against taxes, absent clear proof that available remedies at law were inadequate" *Bob Jones University* , 416 U.S. 725, 743. As to the first element, it is fact specific, and moot if the equity jurisdiction prong is unmet.

The Court does not have subject matter jurisdiction to order the Service to disclose the identity of every third party it contacted during its audit of EduCap

3283014.1

because these contacts and the Service's determination to withhold their names, constitute pre-enforcement activities protected from adjudication by the Anti-Injunction Act. The Anti-Injunction Act protects the Service's determination pertaining to its non-disclosure of third party contacts during the EduCap audit from judicial restraint because they involve pre-enforcement activities At the time EduCap made its FOIA request and as of the date of this writing, the Service had not finished its examination of EduCap; the audit is on-going. (Bruce Decl. ¶ 3; Philipson Decl. ¶ 3.) Accordingly, the examination is a pre-assessment stage of deciding whether any tax liability should be assessed against EduCap. (Philipson Decl. ¶ 6.) The Court acquire jurisdiction at this stage of the administrative process. Only after EduCap has exhausted the Service's administrative appeals can it seek judicial review. *Bob Jones University*, 416 U.S. at 725.

The two-prong exception to the Anti-Injunction Act is inapplicable here. First, EduCap cannot possibly claim that the Service cannot sustain an assessment of tax liability on the merits. The Service's audit of EduCap is ongoing. (Bruce Decl. ¶ 3; Philipson Decl. ¶ 3.) The Service has not determined whether it will assess taxes against EduCap or in what amount. (Philipson Decl. ¶ 6.) Second, EduCap will not suffer irreparable harm warranting the Court's equity jurisdiction; it merely must await the Service's determination as to any possible tax liability.[1]

---

[1]This assertion is not a suggestion by the Service that it will or will not assess taxes against EduCap and/or that EduCap will succeed in obtaining a ruling ordering the Service to disclose its third party contacts in the context of a refund suit. Additionally, the Service does not have an administrative appeal process for the Secretary's determination under 26 U.S.C. § 7602(c)(3)(B).

3283014.1

Judicial review of the Service's determination under section 7602(c)(3)(B) to not

disclose certain third party contacts to EduCap, will interfere with the Service's

activities that may culminate in the assessment and/or collection of taxes from EduCap.

Moreover, the exception to the Anti-Injunction Act does not remotely apply here.

Therefore, the Anti-Injunction Act forecloses the Court's review of plaintiff's request

that the Court order the Service to disclose all the third party contacts it made during its

audit.

C.    **The Court's Jurisdiction Is Barred Under the Administrative
      Procedures Act.**

Given the jurisdictional bar of the Anti-Injunction Act, the only theoretically

possible source for EduCap's injunctive relief is the Administrative Procedures Act. *See*

*e.g., Yamaha Motor Corp. v. United States of Am.*, 779 F. Supp. 610, 612 (D.D.C.

1991)(discussing the APA's prohibition of jurisdiction when another statute forbids it.)

If either the Act or the Declaratory Judgment Act apply, however, then the APA also

forecloses the court's jurisdiction). *Id.* Specifically, the APA forecloses the Court's

jurisdiction because it does not allow judicial review when another statute forbids such

review.  5 U.S.C. §701(a)(1) (the APA does not apply, "to the extent that ... statutes

preclude judicial review.")  Courts have held that section 702(a)(1) excludes from APA

jurisdiction cases where review is prohibited by either the Anti-Injunction Act or the tax

exception to the Declaratory Judgment Act (28 U S C §2201). *See also Yamaha* 779 F.

Supp. 610. (*See Part* III, *infra.*)

Section 702 of the APA contains two additional provisions prohibiting APA

3283014.1

jurisdiction over suits barred the Anti-Injunction Act.  5 U.S.C.  §702(1), (2); *Yamaha*

*Motor Corp. v. United States of Am.*, 779 F. Supp. 610, 612.  Section 702(1) provides that

nothing in the APA, "affects other limitations on judicial review or the power or duty of

the court to dismiss any action or deny relief on any other appropriate legal or equitable

ground." 5 U.S.C. § 702(2).  Additionally, section 702(2) states that nothing in the APA,

"confers authority to grant relief if any other statute that grants consent to suit expressly

or impliedly forbids the relief which is sought." *Id.*  The Court of Appeals for the

District of Columbia affirmed the District Court's dismissal of a taxpayer's attempt to

bring an APA suit against the Service, where that action was barred by the

Anti-Injunction Act, pursuant to section 702(2).  *Hudgins v. Internal Revenue Service*, 54

A.F.T.R.2d 6408 (D.D.C. 1984), *aff'd without opinion*, 764 F.2d 926 (D. C Cir 1985).

Because this action is barred by the Anti-Injunction Act, the Court lacks subject

matter jurisdiction under the APA to adjudicate EduCap's section 7602(c) claim.  *(See*

Part I.B, *supra* for discussion of relevant law and facts.

> **D.    The Court's Jurisdiction is Inappropriate Because the Internal Revenue Code Does Not Offer EduCap Any Remedies of Injunctive or any Other Relief as to the Service's Determination to Not Release the Identity of the Third Party Contacts.**

Congress did not provide taxpayers a private cause of action under sub-section

7602(c)(3).  Section 7602(c) was added to the Internal Revenue Code during the

enactment of the "Internal Revenue Service Restructuring & Reform Act of 1998." H.R.

Rep. No. 105-599, 105th Cong. 2d Sess. (House-Senate Conference Committee Report

June 24, 1998); 2676, 105th Cong., 2nd Sess. (adopted version of bill, July 22, 1998). The Restructuring &Reform Act was enacted in, in part, to provide taxpayers with certain protections and rights during the process of the collection of taxes. H.R. Conf. Rep, No. 105-599, 105th Cong. 2nd Sess. pp. H5304-07, H5352-68 (House agreement to the Conference Report on H.R. 2676, June 25, 1998).

Given Congress' overall intent behind the Internal Revenue Restructuring & Reform Act of 1998, and its addition of section 7602(c), it appears that Congress purposely excluded a mechanism for taxpayers to challenge the Secretary's determination to not provide a record of certain third party contacts. The secretary has the authority to determine to withhold a record of contacts it has made during an audit based on the factors in section 7602(c)(3). In relevant part, if the Secretary determines, based on good cause, that disclosure of the third party contacts "may involve reprisal", the requirement that it provide a record of the contacts "shall" not apply. 26 U.S.C. § 7602(c)(2), (3)(B). *(See infra,* for the statute's text.) Section 7602(c)(1)), related to EduCap's first item of relief, requires that the Service provide a taxpayer with notification prior to examining or summoning third parties in connection with the Service's audit of the taxpayer. 26 U.S.C. § 7602. Congress, under section 7609 of the Internal Revenue Code, gave taxpayers the right to quash summonses the Service has issued to third parties pursuant to section 7602(a), if the Service has failed to comply with the procedural requirements under sub-section 7602(c)(1), (c)(2). Accordingly, there is abundant case law where the issue is whether the Service complied with the

10

procedure to provide notice to a taxpayer before issuing summonses to third party

contacts. *See e.g. United States v. Jillson*, 1999 WL 1249414 (S.D. Fla. 1999) (where the

court quashed the Service's summons served on third parties for its non-compliance of

the administrative requirements under section 7602 (c)(2)).

Congress, however, included no remedy in the Internal Revenue Code to

challenge the Service's determination that providing a taxpayer with a record of the

third parties contacted either  informally or through a summons may result in reprisal

against any person.  Congress apparently chose to not  provide taxpayers with a

remedy that would interfere with the Service's taxpayer audits.  Congress clearly knew

how provide such a remedy-it provided taxpayers with a cause of action, in section

7609, if the Service fails to provide the pre-contact notification to taxpayers of third-

party summonses required under section 7602(c)(1).

Congress' apparent choice not to give taxpayers an avenue for review of the

Service's determination made under section 7602(c)(3)(B) appears to be consistent with

its judicial non-interference mandates in the Anti-Injunction Act and the APA.

Moreover, it has been recognized that plaintiffs do not have a private right of action

under section 7602(c). *Berger v. Internal Revenue Svc.*, 487 F. Supp. 2d 482, 506 (D.N.J.

2007) (where, before dismissing the section 7602(c) count, the court, stated: "Plaintiffs

concede that [section 7602(c) and other counts] do not allow them a private right of

action.")

EduCap is not entitled to the relief it seeks under 26 U.S.C. § 7602(c) because the

11

Internal Revenue Code does not provide a remedy for this claim.

## II.    THE SERVICE CONDUCTED AN ADEQUATE SEARCH OF ITS RECORDS IN RESPONSE TO EDUCAP'S FOIA REQUEST AND PROPERLY WITHHELD INFORMATION UNDER THE FOIA.

EduCap's second item of relief requests the Court: "Order defendant IRS to produce complete and unredacted copies of all materials related to such third party contacts, including all materials requested in EduCap's June 1, 2007 request." (Compl. ¶38(b)). The Court should grant the Service's motion for summary judgment as to this relief because the material undisputed facts show that the Service: (1) performed an adequate search of its records in response to Plaintiff's Freedom of Information Act (FOIA) request for records and (2) properly withheld in whole or in part pages pursuant to the several exemptions from disclosure under the FOIA. See 5 U.S.C.§ 552(b).[2]

### A.    The Internal Revenue Service Performed a Good-Faith Search Reasonably Calculated to Uncover All Records Responsive to EduCap's Request.

An agency must establish that it executed a search "reasonably calculated to uncover all relevant documents" in response to a FOIA request. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II")); *accord, Shores v. FBI,*

---

[2] While EduCap did not request declaratory judgment relief, it referenced the Declaratory Judgment Act at the outset of its complaint. (Compl. ¶2). To the extent the Court interprets EduCap's second item of relief as declaratory relief beyond the parameters of the FOIA, the Service asserts that the Court's jurisdiction is barred under the Declaratory Judgment Act. *See supra* ,Part I.B and *infra* Part III

3283014.1

185 F.Supp.2d 77, 82 (D.D.C. 2002); *Judicial Watch, Inc. v. Export-Import Bank,* 108

F.Supp.2d 19, 25 (D.D.C. 2000); *Fazzini v. U.S. Dept. of Justice,* 1991 WL 74649 at *3 (N.D.

Ill. 1991). The focus is on whether the agency 's search for the records plaintiff

requested was adequate rather than on the results the search produced. *Becker v.*

*Internal Revenue Service,* 34 F.3d 398, 406 (7th Cir. 1994).

      Reasonableness is the standard by which the adequacy of an agency's search for

records is judged. *Becker,* 34 F.3d 398, 405 ; *Steinberg v. United States Dep't of Justice,* 23

F.3d 548, 551 (D.C. Cir. 1994); *Miller v. Dep't of State,* 779 F.2d 1378, 1383, 1384-1385 (8th

Cir. 1985); *see also, Meeropol v. Meese,* 790 F.2d 942, 952-53, 955 (D.C. Cir. 1986). An

agency's reasonableness depends on the facts of each case. *Steinberg,* 23 F.3d at 551. A

search is not inadequate simply because it does not locate every document a requester

seeks. *See e.g., Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996) (agency not

required to look beyond the four corners of the request for leads to responsive

documents); *Steinberg,* 23 F.3d at 552 (holding that the FOIA does not impose a

requirement to follow an endless trail of cross references found in responsive

documents); *Church of Scientology v. IRS,* 792 F.2d 146 (D.C. Cir. 1986) (the court held

that the Service was not required to search its files in all its regional and district offices

for the documents requested); *Meeropol,* 790 F.2d at 953 (it is unreasonable to expect

"even the most exhaustive search to uncover *every* responsive file ...") (emphasis

supplied in original).

      Federal agencies responding to FOIA requests for records are required to use

search methods which can reasonably be expected to yield the information requested. ·

*Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993); *SafeCard Servs. v. SEC,* 926 F.2d 1197,

1201 (D.C. Cir. 1991); *See also Oglesby v. Dep't of Commerce*, 920 F.2d 57, 68 (DC Cir.

1990); *Judicial Watch*, 2006 WL 1793297 (D.D.C. 2006).

　　The agency can sustain its burden of establishing a reasonable search by means

of reasonably detailed, nonconclusory affidavits or declarations submitted in good

faith. *Becker*, 34 F.3d 398, 405; *Steinberg*, 23 F.3d at 551; *Goland v. CIA*, 607 F.2d 339, 352

(D.C. Cir. 1978). Such affidavits or declarations are accorded "a presumption of good

faith, which cannot be rebutted by 'purely speculative claims about the existence and

discoverability of other documents.'" *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200

(D.C. Cir. 1991).

　　The Service used search methods reasonably expected to uncover records

responsive to EduCap's's request. The Integrated Data Retrieval System (IDRS) is the

Service's primary resource for searching taxpayers' current account information.

(Young Decl. ¶ 6; Bruce Decl ¶ 9.) Young is a Disclosure Specialist with the Atlanta,

Georgia Disclosure Office of the Service, whose duties are to process FOIA requests and

requests for return and return information. (Young Decl. ¶ 1.) She processed the FOIA

request EduCap made through its counsel dated June 1, 2007. (Young Decl. ¶¶ 2, 3).

EduCap requested contacts the Service made to third parties-parties other than EduCap,

Inc. (Young Decl. ¶ 3.) Specifically EduCap asked for: The identity of all such parties

contacted by the IRS in connection with the audit of EduCap and the dates of such

14

contacts; all notes, recordings, transcripts, summaries or any other documents that reflect or consist of testimony or oral statements to the IRS by persons the IRS identifies pursuant to paragraph 1 above other than Catherine Reynolds, Wayne Reynolds, , Matthew Murray or Paula Darling; and any documents or other written or electronic materials provided to the IRS by person the IRS identifies pursuant to paragraph 1 above other than Catherine Reynolds, Wayne Reynolds, Matthew Murray, Paula Darling or EduCap.  (Young Decl. ¶ 3(a)-(c).)

Young sent Bruce a search memorandum with a copy of the FOIA request on or about July 16, 2007, in which Young asked Bruce to conduct a search of her paper and electronic files for responsive documents. (Young Decl. ¶ 5.)  Young  met with Bruce on or about July  19, 2007 to discuss EduCap's FOIA request and ascertain whether Bruce had any records responsive to it. (Bruce Decl. ¶ 11; Young ¶ 6.)  Shortly after this meeting, Bruce sent Young approximately 70 pages responsive to EduCap's request, including a third party contact list. (Young Decl 7; Bruce ¶ 10.)  Young also conferred with Hardy while processing the request. (Mikolashek Decl. ¶ 10.)  On August 16, 2007, Young responded to EduCap's FOIA request and provided it with the documents she deemed responsive to the request. (Young Decl. ¶8.)

Maureen Hardy is Third Party Contact Coordinator. (Hardy Decl. ¶ 5; Bruce Decl. ¶ 9)  Third party contacts are entered into the Third Party database on the IDRS by Maureen Hardy who does so from information she obtains from Forms 12175, which the revenue agents complete for each interview they conduct. (Bruce Decl¶  9; Hardy

15

Decl. ¶ 2.) When contacts have expressed a fear of reprisal at the time they are interviewed, the agent omits their names from the form, and instead marks the reprisal item on the form. (Bruce Decl. ¶ 6.) Bruce spoke to 28 individuals during the course of the Service's audit of EduCap, and spoke to some individuals more than once; 19 of them stated they feared reprisal. (Bruce Decl. ¶ 8; Philipson Decl. ¶6.) Bruce completed a form each time a person was contacted. (Bruce Decl. ¶¶ 8, 9.)

The Service conducted a second search responsive to EduCap's FOIA request when it commenced the instant action. (Mikolashek Decl. ¶ 8.) Adrienne Mikolashek, the attorney at the Office of Chief Counsel of the Service assigned to assist in the defense of this suit, coordinated the search. (Mikolashek Decl. ¶¶ 1, 8.) Mikolashek conferred with Bruce and asked her to conduct a search of her paper and electronic files, and to direct other revenue agents to do the same. (Mikolashek Decl. ¶ 9.) Mikolashek also conferred with Hardy and asked her to search her records, ( Mikolashek ¶¶ 10, 11.), and with Young, the Disclosure Specialist. (Mikolashek Decl. ¶ 12.) Mikolashek reviewed all the responsive records she received based upon her conferences, and determined that: The Service located 986 pages of material responsive to EduCap's FOIA request, which are the subject of this litigation; it has decided to re-release 23 pages (pages 1-17, and 20-25) that were previously redacted and 2 pages (pages 18-19) with revised redactions. (Mikolashek Decl. ¶ 16.) The Service has also released 40 pages (pages 26, 28-29, and 32 -68) in full and 3 pages (pages 27 and 30-31) in part. Additionally, the Service's counsel expects to release the Forms 12175 that were actually

3283014.1

completed as it deems these pages responsive to the request y no later than May 19, 2008; and page # 27, which was inadvertently omitted from the package Banerjee sent on May 7th, will also be sent by this time. (Banerjee Decl. ¶4) The remaining 877 pages are being withheld in their entirety. (Mikolashek Decl. ¶ 16)

On May 7, 2008, the Service provided EduCap with 67 pages obtained as a result of Mikolashek's review; they bear control numbers 1-25, 27-31, 32-63, 64-65, and 66-68. (Banerjee Decl. ¶ 2, Ex. A.) Pages 1-25 represent pages the Service's Disclosure Specialist previously provided EduCap in August 2007 in response to EduCap's request. (Banerjee Decl. Ex. A.)  The Service re-released the 25 pages and released in full 23 of those 25 pages. *Id*  Mikolashek determined that additional documents that Young had located were also responsive to EduCap's request. (Mikolashek Decl. ¶ 8.) She determined to release these in response to EduCap's FOIA request; they consist of pages bearing control numbers 0032-0063 and 0066-0068, which are being released in full, and pages bearing 0027-0031 and 0064-0065, which are being releasing in part. (Banerjee Decl. ¶¶ 2, 3; Ex. A.)  *(See supra,* Part II.B (discussion on the documents withheld.)

**B.    The Information the Service Withheld from Disclosure Is Exempt from Disclosure Pursuant to the FOIA Exemption Allowing Application of Non-FOIA Non-Disclosure Statutes.**

Section 552(b)(3) of the FOIA exempts disclosure under sections 6103 and 7602(c)(3)(B) of the Internal Revenue Code.  Exemption 3 of the FOIA protects from disclosure information which is:

3283014.1

> Specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  Under this exemption, if the Court determines that a relevant statute exists and that any of the withheld information is within the statute's coverage, the material must be withheld no matter how unwise or self-protective the statute may seem.  *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 868 n.29 (D.C. Cir. 1981); *Goland v. CIA*, 607 F.2d 339, 350 n.65 (D.C. Cir. 1978) (sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage).

The three main types of documents being withheld in part or in full are :  (1) handwritten and typed notes authored by revenue agents reflecting statements made by third parties during an interview about EduCap; (2) documents supplied to the Service by the third parties interviewed, and a list of third party contacts.  (Mikolashek Decl. ¶18, 21.)

### 1.    *Section 6103(e)(7) Prohibits Disclosure of Information That Jeopardizes Tax Administration.*

Congress has provided in 26 U.S.C. § 6103(a) that tax return information generally may not be disclosed.  It further provided in 26 U.S.C. § 6103(e)(7) that a taxpayer may inspect his or her own tax return information only if the Secretary of the Treasury or his delegate determines that such disclosure would not seriously impair

18

Federal tax administration. Section 6103(e)(7) qualifies as a non-disclosure statute under the FOIA, provided that the Service can show that the information withheld is: (1) return information; and (2) disclosure of the information would seriously impair federal tax administration. *Currie v. I.R.S.,* 704 F.3d 523, 531 (11ᵗʰ Cir. 1983); *Radcliffe v. I.R.S.* 536 F. Supp. 423, 435 (S.D.N.Y. 2008). If the Secretary's delegate has determined the opposite – that disclosure would seriously impair tax administration – Congress has statutorily provided that the return information may not be disclosed. *See e.g. McQueen v. United States,* 264 F. Supp. 2d 502, 516 (S.D. Tex 2003).

The pages of notes the revenue agent took while interviewing third party contacts during its audit of EduCap are to be withheld in part or in full because they contain information that is exempt from disclosure pursuant to Exemption (b)(3) in conjunction with 6103(e)(7). These records bear control numbers 69-282 and 27, 30, and 31. (Mikolashek Decl. ¶19.) The revenue agent created these records in connection with the Service's attempt to determine whether to assess any liability against EduCap under the tax laws. (Mikolashek Decl. ¶¶11, 19(c); Bruce Decl. ¶15.) The third party contacts who provided information to the revenue agents did so only after expressing a desire for their names to remain confidential (Mikolashek Decl.¶19), and implicitly the information they supplied is to be treated confidentially. Indeed, 19 individuals expressly stated they wanted their names withheld, and another individual stated that he or she did not object to his name being disclosed, but wanted the statements he or she made kept confidential. (Mikolashek Decl.¶19; Philipson Decl. ¶6.)

19

The Service asserts that the documents a third party contact gave to the revenue agent during an interview during the Service's audit of EduCap are to be withheld in pursuant to exemption (b)(3) in conjunction with section 6103(e)(7). These records bear control numbers 283 -945 (Mikolashek Decl.¶20.) The person who provided the documents held a unique position in EduCap with access to a combination of information that, if described, would allow EduCap to narrow the list of potential sources of the information with greater accuracy and compromise the third party's identity. (*Id.*) The third party has expressed a fear of reprisal (*Id.*) Bruce Philipson is a supervisory revenue agent. (Philipson Decl. ¶ 2.) His duties and responsibilities include planning, directing, and coordinating the work of revenue agents engaged in the conduct of investigations of varying levels of difficulty and complexity concerning exempt organization. *Id.* Philipson has the delegated authority, through Delegation Order 11, to determine whether an agency record is exempt from disclosure of under section 6103(e)(7). (Philipson Decl. ¶5.)

Given the apprehension expressed by these third parties, and the fact that the Service's investigation is not complete, the Secretary has determined that the disclosure of the information in the interview notes will seriously impair federal tax administration. Clearly, the release of the information in the notes and in the documents the contact provided the revenue agent will have chilling effect on the availability of important sources of information about EduCap.

3283014.1

### 2. *Third Party Contact Information Is Properly Withheld Under Sub-Section 7602(c)(3)(B).*

The application of section 7602(c)(3)(B) within the exemption (3) umbrella appears to be one of first impression. Courts, however, have historically held that several provisions of the Internal Revenue Code constitute non-disclosure provisions that fall under exemption (b)(3). *See e.g. Currie v. I.R.S.*, 704 F.3d 523, 531 (11th Cir. 1983) (adjudicating 26 U.S.C. § 6103(e)(7) in conjunction with Exemption 3); *Church of Scientology of California v. IRS*, 792F.2d 146, 149-150 (D.C. Cir. 1986) (adjudicating 26 U.S.C. § 6103(a) in conjunction with Exemption 3). The decision to not disclose information pursuant to section 7602(c)(3), like section 6103(e)(7), is based upon the Secretary's determination. Similarly, the Service contends, section 7602(c)(3) operates as a non-disclosure statute permitting the non- disclosure of third party contact information to a taxpayer when one or more of the circumstances set forth in section 7602(c)(3)(A)-(C) apply.

Section 7602(c) provides that the Service may not contact a third party without giving the taxpayer advanced notice. 26 U.S.C. § 7602(c)(2). It requires the Service subsequently to supply taxpayers a record of third party contacts it has made. *Id.* However, section 7602(c)(3)(B) and the regulations provide an exception to this general rule, stating that neither advance notice nor providing a record of the contacts is required when such notice might result in reprisal. Specifically, section 7602(c)(3)(B) states in relevant part:

(C) NOTICE OF CONTACT OF THIRD PARTIES.−

21

(2) NOTICE OF SPECIFIC CONTACTS.– The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the *determination* or collection of the *tax liability* of such taxpayer. Such record shall also be provided upon request of the taxpayer...
(3) EXCEPTIONS.– this subsection *shall* not apply--

      (B) if the Secretary *determines* for good cause shown that .... such notice *may* involve reprisal against *any* person

26 U.S.C. § 7602(c)(2), (c)(3)(emphasis added).  Congress' use of the mandatory word "shall" rather than the permissive "may" infers that the Service has no discretion in releasing the third party contacts if it detects its disclosure may involve reprisal.  The words "may involve" connotes a broad range of possibilities of reprisal and no need of direct evidence of reprisal.  The Treasury promulgated a regulation that implements and interprets section 7602(c)(3):

> A statement by the person contacted that harm may occur against any person is sufficient to constitute good cause for the IRS employee to believe that reprisal may occur. The IRS employee is not required to further question the contacted person about reprisal or otherwise make further inquiries regarding the statement.

28 C.F.R. § 301.7602-2(f)(3).

The revenue agents 'notes taken during their interviews of third party contacts, and the documents one of these contacts provided to the agent, are exempt from disclosure pursuant to exemption 3 in conjunction with 26 U.S.C. § 7602(c)(3)(B).  (For a detailed description of the documents, see *supra* Part II.B.1).  Pages 69 through 85 and 136 through 282 are notes of the interviews of contacts who expressed fear of reprisal and asked that their identities not be released.  (Mikolashek Decl.¶19(a))  Accordingly, the Secretary determined that good cause existed showing reprisal and decided not to

3283014.1

provide EduCap with a record of all third party contacts.[3] The information in the notes

contain facts the release of which would be tantamount to releasing their names.

(Mikolashek Decl.¶19(a)  The third parties with whom the revenue agents spoke all had.

personal knowledge of EduCap's operations, many of them as former employees.

(Mikolashek Decl. ¶19(a)  At the time of the interview, some of these contacts still

worked in the same industry as EduCap and believed EduCap and its managers had

influence in it.  (Id.) Each page of notes contains sufficient unique information and

knowledge of the interviewee about EduCap such that their release would allow

EduCap to deduct the identity of the individual.  (Id.)

Similarly, the documents  provided by one of the contacts is also exempt from

disclosure.  This contact, who expressed fear of reprisal, held a unique position in

EduCap with access to a combination of information that, if described would allow

EduCap to narrow the list of potential sources of the information.  (Mikolashek Decl.

¶20.)  For these, and the additional reasons stated in the immediately preceding

paragraph, the documents from the contact are exempt from disclosure under sub-

section 7602(c)(3)(B).

3.    *Section 6103(a) Prohibits Disclosure of Taxpayer Return Information.*

Section 6103(a) mandates that tax return information be held confidential subject

---

[3]The Service points out that the Service released the identity of contacts who did not express fear of reprisal in response to the original FOIA request and on May 7, 2008. (*See* Banerjee Decl. ¶2, Ex. A.)

3283014.1

to a number of strictly construed exemptions. *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9 (1987); *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir. 1979), it has been held to be a statute falling within the of Exemption 3. *Church of Scientology of California v. Internal Revenue Service*, 792 F.2d 146, 149-150 (D.C. Cir. 1986). Return information is broadly defined :

> a taxpayer's *identity* ...or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence of liability ... of any person under this title ....

26 U.S.C. § 6103(b)(2)(A)(emphasis added).

Section 6103(a), in conjunction with exemption (b)(3) applies to withhold part of a page of interview notes (page # 31) and a list of taxpayer names (pages #18, 19). and another interview note (page # 27). (Mikolashek Decl. ¶¶19, 19(a), 21, 21(a).)  On pages # 18 and 27 the Service withheld a social security number of an individual.[4]  (*Id.*)  The Service is prohibited from disclosing all information that directly or indirectly identifies third party taxpayers pursuant to 26 U.S.C. §§ 6103(a), (b)(2)(A).  The Service's decision to withhold the return information on pages 18, 19, and 27 is consistent with the holding of the Court of Appeals for the District of Columbia in *Church of Scientology of California v. Internal Revenue Service*, 792 F.2d 146, 149-150 (D.C. Cir. 1986);  *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9 (1987).

---

[4]The Service states that pages 18 and 19 are withheld in part even though only information on page 18 is being withheld because both pages together make up one document entitled "List of 3rd Party Contacts FOIA Request."

3283014.1

The pages that were released to EduCap in part and in full are not attached to any of the declarations so as not to disclose the taxpayer information of EduCap and/or of individual third party taxpayers.[5]

4.    *Sub-Section 552(b)(5) Exempts Records Containing Deliberative and Pre-decisional Agency Information.*

Section 552(b)(5) protects from disclosure under the FOIA "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As the language suggests, exemption 5 incorporates those privileges which the government enjoys in pretrial discovery under relevant statutes and case law.  *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984); *see also, NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975) ("Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency.").

The governmental deliberative process privilege is one of the privileges covered by exemption 5. See *Sears, Roebuck & Co.*, 421 U.S. at 150; *EPA v. Mink*, 410 U.S. 73, 87 (1973); *Tax Analysts v. Internal Revenue Service*, 294 F.3d 71, 76 (D.C. Cir. 2002).  The privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeisee, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  It also protects other

---

[5]Upon the Court's request, however, the Service will provide it the redacted and unredacted version of the relevant pages for *in camera* inspection.

subjective documents reflecting the author's personal opinions prior to agency adoption of a policy. *Judicial Watch, Inc. v. DOJ*, 306 F Supp.2d 58, 70 (D.D.C. 2004) (where the court found that handwritten notes a member of the Attorney General's staff made on an invitation were exempt from disclosure because they would reveal the factor that the staff member considered important, and how the decision to attend the event may have been reached). *See also Tax Analysts*, 294 F.3d at 80 (D.C. Cir. 2002) (where the court affirmed the lower court's decision to withhold from disclosure five Technical Assistance memoranda).

Disclosure of such documents could inhibit "'frank discussion of legal or policy matters'" leading to weaker decisions and policies. *Sears, Roebuck & Co.*, 421 U.S. at 150; *see also, Mink*, 470 U.S. at 87; *Tax Analysts*, 294 F.3d at 80. In determining whether the governmental deliberative process privilege protects a particular document, that document must be both pre-decisional and deliberative in nature. *Mapother v. Department of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Judicial Watch, Inc.*, 108 F.Supp.2d at 35.

The Service asserts that portions of two pages of interview notes contain information that is pre-decisional and deliberative, and therefore exempt from disclosure pursuant to exemption 5. Specifically, pages bearing control numbers 30 and 31 are typed notes of a third party interview dated August 9, 2006. The information redacted, specifically from page # 30, consists of the revenue agent's mental impressions regarding a statement made by the individual. (Mikolashek Decl. ¶ 18(e).)

3283014.1

The audit team uses the agents' notes to aid them in making determinations about whether the taxpayer will be liable for any taxes, for example. (Philipson Decl. ¶ 6(a).) The examination of EduCap, for which the interview was conducted, is ongoing such that no determination as to whether EduCap will be assessed any tax liability has been reached. ((Philipson Decl. ¶ 6; Bruce Decl. ¶3.) The examination is clearly at the deliberative stage as the information reflects the author's personal opinion before the Service has taken final action. The status of the examination as ongoing means that any mental impressions might reflect mere recommendations. The Service's assertion to withhold the agents' notes on page # 30 is consistent with the holding in *Judicial Watch*, 306 F Supp.2d at 70.

### 5.    Section 552(b)(7)(A) Exempts Records Pertaining to Pending Investigations.

It is clear that documents compiled in investigations or proceedings in the civil or criminal context are within the meaning of "records or information compiled for law enforcement purposes" under FOIA's exemption 7.    *See Williams v. IRS*, 345 F. Supp. 591, 593 (D. Del. 1972), *aff'd*, 479 F.2d 317, 318 (3d Cir. 1973) (civil context, involving audit); *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (criminal context, involving investigation); *White v. IRS*, 707 F.2d 897, 901 (6th Cir. 1983) (civil and criminal context); *B & C Tire Co. v. IRS*, 376 F. Supp. 708, 713 n.11 (N.D. Ala. 1974).    In *B & C Tire*, the court specifically rejected a taxpayer's contention that a civil audit of its taxes was not a "law enforcement proceeding."    *B & C Tire*, 376 F. Supp. at 713.    Therefore, the Service has the requisite law enforcement mandate to qualify as a law enforcement agency.    *Lewis v.*

27

3283014.1

*IRS,* 823 F.2d 375, 379 (9th Cir. 1987).

The Service must then prove a law enforcement purpose for its compilation of

information in order to justify its withholding of such information under exemption 7

*John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989), *reh'g denied,* 493 U.S. 1064

(1990). Since the 1986 amendments to the FOIA, the District of Columbia Circuit has

held that in order to invoke exemption 7, the agency need merely establish a nexus

"between [its] activity" (not a particular investigation) "and its law enforcement duties."

*Keys v. Department of Justice,* 830 F.2d 337, 340 (D.C. Cir. 1987). Exemption 7(A) states:

> **(7)** records or information compiled for law enforcement purposes, but only to
> the extent that the production of such law enforcement records or information
> (A) could reasonably be expected to interfere with enforcement proceedings...

5 U.S.C. § 552(b)(7)(A).

Information on the revenue agents' interview notes are exempt from disclosure

under exemption 7(A) because EduCap's audit is not completed. As of the date of this

writing, the Service had not finished its examination of EduCap; the audit is on-going.

(Bruce Decl. ¶3; Philipson Decl. ¶3; Mikolashek Decl. ¶¶ 19, 19(a).) Accordingly, the

examination is at an investigatory stage of assessing whether any tax liability should be

assessed against EduCap. (Philipson Decl. ¶6.) Disclosure of the information contained

in these notes can hamper the Service's progress in the audit, and is likely to discourage

those interviewed to continue participating in the audit and/or discourage future third

party contacts from volunteering relevant information to the Service.

3283014.1

### III.  To the Extent EduCap Seeks Declaratory Judgment Relief as to its First Item for Relief, the Court Does Not Have Subject Matter Jurisdiction over It.

EduCap is not entitled to declaratory judgment relief because: (1) it did not request declaratory judgment as a form of relief; and (2) even, if it had requested it, the Declaratory Judgment Act (DJ Act) does not confer subject matter jurisdiction to the Court.

### A.    The Court Lacks Jurisdiction Because EduCap Failed to Request Relief Under the Declaratory Judgment Act.

EduCap is not entitled to declaratory judgment relief because it did request such relief in its complaint.  But even were EduCap to ask to amend its complaint to seek declaratory relief, such an effort would be unavailing.

### B.    The Court Lacks Subject Matter Jurisdiction Under the DJ Act.

The Declaratory Judgment Act expressly prohibits federal courts subject matter jurisdiction over federal tax matters.  The Declaratory Judgment Act is set forth in 28 U.S.C. § 2201, which states, in relevant part:

> (a) In a case or controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action ,,, as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect

3283014.1

of a final judgment or decree and shall be reviewable as such.

\*\*\*\*\*\*\*\*

28 U.S.C. §§ 2201, 2202. The DJ Act prohibits jurisdiction with respect to federal tax matters unless the action relates to the status and classification of EduCap as an exempt organization.

The scope of the Declaratory Judgment Act is "coterminous" with the scope of the AI Act. *Investment Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979)(held that he bar of the tax exception to the Declaratory Judgment Act is co-terminous with the bar of the AI Act and the court did not have jurisdiction even if no other forms of relief were available). The Supreme Court has held that the Declaratory Judgment Act's "Federal taxes" exception is as broad in scope as the AI Act's protection against tax collection interference. *Alexander v. "Americans United," Inc.*, 416 U.S. 752, 759 (1974).

The Declaratory Judgment Act forecloses the Court's subject matter jurisdiction to adjudicate EduCap's cause of action under section 7602(c)(3) because it is co-terminous with the Anti-Injunction Act Act, which forbids judicial interference with pre-enforcement activities. ( See *supra*, Part I.B (discussion of the Anti-Injunction Act Act's application to EduCap's first form of relief.)

3283014.1

CONCLUSION

For the reasons stated above, this Court does not have subject matter jurisdiction over EduCap's relief requesting the Court to order the Service to identify third party contacts, which the Service determined not to disclose in responding to EduCap's FOIA request. The Internal Revenue Service's search for records responsive to EduCap's FOIA request was adequate, and its partial withholdings justified. Accordingly, based upon the undisputed facts, the Service is entitled to judgment as a matter of law.

Respectfully submitted

/S/ Carmen M. Banerjee

CARMEN M. BANERJEE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 307-6423
Carmen.M.Banerjee@usdoj.gov

Counsel for defendant
INTERNAL REVENUE SERVICE

Of Counsel:

JEFFREY A. TAYLOR
United States Attorney

31

3283014.1

1
2
3          IN THE UNITED STATES DISTRICT COURT FOR THE
4                       DISTRICT OF COLUMBIA
5
6   EDUCAP, INC.                          )
7                                         )
8              Plaintiff,                 )
9                                         )        No.  1:07-cv-02106 RMC
10                                        )
11     vs.                                )
12                                        )
13  INTERNAL REVENUE SERVICE              )        Declaration of
14                                        )        Patricia Bruce
15             Defendant.                 )
16
17
18          I, Patricia Bruce, pursuant to the provisions of 28 U.S.C. § 1746(2), declare as

19   follows:

20          1.      I am an Internal Revenue Agent in Internal Revenue Service's Tax

21   Exempt/Governmental Entities (TE/GE) Division, Exempt Organizations, Examinations,

22   Financial Investigation Unit.  I have been a Revenue Agent since January 1988 and with

23   the Service since January 1988.

24          2.      As a Revenue Agent, my duties and responsibilities include conducting

25   examinations of varying levels of difficulty and complexity concerning exempt

26   organizations.  In this case I serve as the team leader for the administrative examination

27   of plaintiff because the examination is part of the Team Exam Program (TEP), a

28   program in TE/GE, Exempt Organization for large cases.  As team leader, I work with

29   the revenue agents on the team to gather the information needed for the audit and

30   coordinate the different portions of the audit to ensure the audit moves forward and is

31   technically correct.

3.    In August 2004, the IRS began an examination of plaintiff and the examination has not yet been completed.  The examination was on-going at the time plaintiff filed its FOIA request and subsequent lawsuit.

4.    Having read plaintiff's FOIA request and plaintiff's complaint in this case, it is my understanding that plaintiff has requested (1) the names of the third parties contacted; (2) any notes taken during those interviews, and (3) any information provided by a third party.  I am very familiar with the examination of plaintiff and the documents requested in this lawsuit, having written or participated in many of the interviews and based on my direct involvement in the audit.

5.    A third party contact is made by a revenue agent under the authority of I.R.C. § 7602(c) for purposes of determining a person's correct tax liability.  For purposes of section 7602(c), a third party contact has been made when an IRS employee initiates contact with a person other than the taxpayer and asks questions about a specific taxpayer with respect to that taxpayer's Federal tax liability.  IRM 4.11.57.4.

6.    Pursuant to IRM 4.11.57.4, IRS employees must record each identifiable third-party contact on Form 12175. (A blank copy of a form 12175 is attached as Exhibit A.) Form 12175 is the source of the information used to build the third-party contact list. A taxpayer may request a list of third-party contacts, as plaintiff has done.  See, I.R.M. 4.11.57.4.7.  The form contains the name of the taxpayer who is under investigation, information as to the Service employee who made the contact, and the date and name of the person contacted.  Where a third party has expressed a fear of reprisal the name

2

1    of the third party is omitted from the Form 12175 and the reprisal box on line 7 is

2    checked.

3        7.    At the beginning of every interview with a third party, it is my practice to

4    advise them as follows:

5            We are contacting you under the provisions of the Internal Revenue Code

6            section 7602 to gather information regarding a tax matter with an exempt

7            organization. In particular we are contacting you regarding your relationship with

8            [name of taxpayer]. For verification purposes, please confirm or deny your

9            affiliation with this organization.

10           By law, the IRS is required to provide your name, upon request, to the taxpayer

11           as a third party contact. However, if there is a fear of reprisal then your name will

12           not be submitted. If you believe that including your name on the list may result in

13           reprisal against any person for any reason we can exclude your name from the

14           list. Do you have any reason to believe that reprisal may occur against you or

15           any other person?

16       8.    I spoke to 28 individuals during the course of this audit and spoke to some

17    of these individuals more than once. My records show there were a total of 31 third

18    party contacts. For each interview I conducted, I gave the individual my standard notice

19    as stated in paragraph 7 above regarding their relationship with EduCap also formerly

20    known as Education Finance Resources Corporation. Nineteen of the 28 individuals

21    informed me that they feared reprisal.

22       9.    For each interview, I completed a Form 12175 and sent it to Maureen

23    Hardy, a Third Party Contact Coordinator with TEGE, Exempt Organizations. Ms.

3

1    Hardy inputs the data into the Service's centralized computer database system (IDRS)

2    and from this she can print the third party contact list upon request.  The names of the

3    individuals who expressed a fear of reprisal are never submitted to the Third Party

4    Contact Coordinator nor are they ever entered into IDRS.

5         10.    On or about July 17, 2007, I received a search memo and copy of the

6    FOIA request from the Service's disclosure office, directing me to search my files for

7    responsive documents.

8         11.    On July 18, 2007, I spoke with Valdine Young, a Disclosure Specialist with

9    the Service and discussed plaintiff's FOIA request.  She had received a FOIA request

10   from plaintiff seeking information from my files related to these third party contacts.  I

11   explained to Ms. Young what information I had and that several of the individuals had

12   expressed a fear of reprisal.

13        12.    At Ms. Young's request, I searched my paper and electronic files for

14   responsive documents related to those individuals who did not express a fear of

15   reprisal.  In the case file, I located interview notes and my list of third party contacts as

16   well as a copy of a letter dated June 25, 2007 from Maureen Hardy to plaintiff with a

17   copy of the third party contact list printed from IDRS.  I forwarded the documents I

18   located to Ms. Young.

19        13.    I heard nothing more about the FOIA request until January 4, 2008 when I

20   was contacted by Adrienne Mikolashek, an attorney with the Service's Office of Chief

21   Counsel about this litigation.  Ms. Mikolashek informed me that plaintiff had filed suit

22   and provided me with a copy of the complaint.  Ms. Mikolashek asked me to search my

4

1    files and provide her with copies of documents that would be responsive to plaintiff's

2    FOIA request.

3         14.    I conducted a search of my paper and electronic files related to plaintiff

4    and located handwritten and typed notes from my interviews with third parties.  My file

5    notes indicated that I did not have notes from some of the third party contacts that I

6    made.

7         15.    As team leader, I coordinated with the other members on the audit team,

8    Cheryl Cross, Brian Knoch, and Igor Ostrovsky and the case manager Bruce Philipson,

9    and asked that they search their paper and electronic files for responsive documents.

10   Each of them provided me with copies of their handwritten and typed interview notes as

11   well as copies of documents one third party contact provided to the Service.

12        16.    After reviewing the material, I supplied copies of all of these documents to

13   Ms. Mikolashek.

14

15        I declare under penalty of perjury that the foregoing is true and correct.

16

17   Executed this **15th** day of **May**, 2008 in **Atlanta, GA**.

18
19
20
21   Patricia Bruce
22   Internal Revenue Agent
23   Internal Revenue Service
24   Tax Exempt/Governmental Entities Division
25   Exempt Organizations
26   Examinations, Financial Investigations Unit
27   401 W. Peachtree St.
28   Atlanta, GA 30308
29

5

## Third Party Contact Report Form

| | | |
|---|---|---|
| **1. Taxpayer TIN** <br> *(Include appropriate file source code.)* <br><br> __ __ __—__ __—__ __ __ __ __ | **2. Name Control** <br><br> __ __ __ __ | **3. Employee ID Number** <br><br> _____ <br><br> **Employee Telephone Number** |
| **4. Secondary TIN** <br> *(Joint filing 1040 only.)* <br><br> __ __ __—__ __—__ __ __ __ __ | | _____ <br><br> **Employee Mail Stop Number** <br><br> _____ |

**5. Third Party Contact Is for:**
*(Please check one.)*

**Primary TIN** ____    **Secondary TIN** ____    **Both** ____
*(Note: Check **both** for joint filing 1040 only.)*

### Contact Information

**6. Date of Contact:**
*(Date format is: yyyy/mm/dd.)* _____ / _____ / _____

**7. Reprisal Determination**

If fear of reprisal has been indicated, check the box below

☐

**8. Name of Third Party** *(only one 3rd party contact per form.)* _____

**8a.** *Check the one category that best describes the third party.*

☐ *1. Individual*    ☐ *2. Financial Institution*    ☐ *3. Business*    ☐ *4. State/Fed. Government Org.*    ☐ *5. Other*

**9. TE/GE Use Only**

*TE/GE* Determination (EDS) Case Number or
National Office Case Control Number

*EP* Plan Number __ __ __    __ __ __ __ __ __ __ — __

| **10. MFT/TAX Period** | *(Enter all MFT tax periods relating to Primary TIN)* | | Example: 30 <br> MFT | 1999 <br> Year | 12 <br> Month |
|---|---|---|---|---|---|
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |
| __ __ __ | __ __ __ | __ __ __ | __ __ | __ __ __ __ | __ __ |

*This area is for Third Party Coordinator document control tracking use only. Enter Document Sequence Number.*

*Document Sequence Number:* _____

Department of the Treasury - Internal Revenue Service

**Form 12175 (Rev. 02/2001)**
Cat. No. 26796L

## Instructions for Completing Third Party Contact Report Form 12175

**ENTER ONLY (1) ONE THIRD PARTY CONTACT PER FORM**

1. Enter only (1) one Taxpayer TIN. This is an edited TIN, enter the dashes where appropriate. Include appropriate file source code.

2. Enter the four-letter name control for the taxpayer. Ensure that it is the correct name control for the Taxpayer TIN in Box 1.

3. Enter your Employee Identification Number (badge number or IDRS number), telephone number and your mail stop number (if applicable).

4. Secondary TIN should be entered for joint 1040 situations only.

5. Place a check mark on the appropriate line to indicate whether the third-party contact is for the Primary TIN, Secondary TIN or Both (the Primary TIN and Secondary TIN). Both should only be checked in those situations where there is a jointly filed 1040. Don't check more than one line.

**CONTACT INFORMATION**

6. Enter the date the third party contact was made. Use the following format: yyyy/mm/dd. For example: 1999/01/19.

7. **IF A FEAR OF REPRISAL HAS BEEN INDICATED, CHECK THE "REPRISAL" BOX. WHEN FEAR OF REPRISAL IS INDICATED, ONLY THE FOLLOWING DATA SHOULD BE ENTERED ON THIRD PARTY CONTACT FORM 12175: TAXPAYER TIN, NAME CONTROL, EMPLOYEE ID NUMBER, TELEPHONE NUMBER, MAIL STOP NUMBER, DATE OF CONTACT AND CATERGORY CODE.**

8. Provide the full name of the third party, whenever possible. When the name of the third party isn't known, but the relationship to the taxpayer is, write the term that describes the relationship. For example: wife, mother, brother, neighbor, son, etc. When the name or relationship isn't known, write the occupation. For example: gardener, loan officer, etc. If a business is identified as a third party contact, write the complete name of the business. For example: First National Bank of Richmond, Virginia. For a business contact, employees

are required to write only the name of the business, not the name of the employee of the business. In situations where the name of the third party, the relationship, or occupation isn't known, employees should write **"Unknown Person"** as the third party name.

8a. Check the **ONE** box that best describes the third party. 1. Individual; 2. Financial Institution; 3. Business; 4. State/Fed. Government Organization; or 5. Other.

9. **For Tax Exempt and Government Entities (TE/GE) Use Only.** For Employee Plans, enter the three digit Employee Plan Number (place a "P" at the end of Primary TIN in Box 1). If a TE/GE determination, enter the TE/GE Determination Number (EDS) or if assigned to National Office, enter the Case Control Number. Enter control numbers using the following format: 999999999X. 999999999 = the EDS Case Number or National Office Case Control Number. X = case type with values of: E = EP Determination, O = EO Determination, A = EP Division (Headquarters) and B = EO Division (Headquarters).

10. Enter all (2) two digit Master File Tax Class Codes and Tax Periods for the taxpayer to which the third-party contact is related. Use the following format: 30 1999 12. Where 30 = MFT; 1999 = Year; 12 = Month. Note: When an EIN is entered in Box 1, don't enter Individual Master File MFTs. And when an SSN is entered in Box 1, don't enter Business Master File MFTs.

**IT IS IMPORTANT TO LIST ALL TAX PERIODS AND MFTs TO ENSURE PROPER MAILING OF THIRD PARTY CONTACT LISTINGS TO POAs.**

**Privacy Act Notice**

Internal Revenue Code section 7602 (c), added by the IRS Restructuring and Reform Act of 1998, requires the IRS to provide a report to each taxpayer of certain third party contact made with respect to the determination or collection of the taxpayer's tax liability. The information on this form is used to make such reports. The employee identification number is used to permit verification of the contact report information. Failure to provide this information may result in discipline.

**Form 12175 (Rev. 02/2001)**
Cat. No. 26796L