## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

EDUCAP, INC.,                          )
                                       )
      Plaintiff,                )
                                       )
    v.                            )          NO. 1:07-cv-02106 RMC
                                       )
INTERNAL REVENUE SERVICE               )
1111 Constitution Avenue, N.W.         )
Washington, DC 20224,                  )
                                       )
      Defendant.                )


<u>ERRATA</u>


On May 15, 2008, defendant Internal Revenue Service , by and through its attorney, filed defendant's motion for summary judgment, memorandum and points of authorities in support thereof, a proposed order, several declarations, and the Service's statement of material facts to which it contends there is no genuine issue in dispute pursuant to LCvR 7(h).  Upon further review of the motion and the memorandum, defendant's attorney discovered that pages 1, 2, and 4 of the memorandum were advertently not scanned.


/


/

3289608.1

Attached to this errata, in one pdf file, is a complete set of the motion and the

memorandum.

Respectfully submitted

*/S/ Carmen M. Banerjee*

CARMEN M. BANERJEE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 307-6423
Carmen.M.Banerjee@usdoj.gov


Counsel for defendant
INTERNAL REVENUE SERVICE

Of Counsel:

JEFFREY A. TAYLOR
United States Attorney

3289608.1

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

EDUCAP, INC.,                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
        v.                                       )        NO. 1:07-cv-02106 RMC
                                                 )
INTERNAL REVENUE SERVICE                         )
1111 Constitution Avenue, N.W.                   )
Washington, DC 20224,                            )
                                                 )
                    Defendant.                   )

## THE INTERNAL REVENUE SERVICE'S MOTION FOR SUMMARY JUDGMENT

Defendant Internal Revenue Service, through undersigned counsel, moves this

Court pursuant to Fed. R. Civ. P. 56, for a judgment in its favor and against plaintiff, as

there are no genuine issues of material fact, and defendant is entitled to judgment as a

matter of law.  Specifically, the Internal Revenue Service (the Service) asserts:  (1)the

Court lacks subject matter jurisdiction to adjudicate any relief plaintiff seeks beyond the

relief available under the Freedom of Information Act; (2) the Service conducted an

adequate search of its records in response to plaintiff's request for records under the

Freedom of Information Act and (3) the Service properly withheld information

pursuant to 5 U.S.C. § 552(b).

A Memorandum and points of authorities, a Statement of the Internal Revenue

Service of the Material Facts Not in Genuine Dispute Pursuant to Local Rule 7(h), and

the declarations of Patricia Bruce, Bruce Philipson, Carmen M. Banerjee, Maureen

3284456.1

Hardy, Valdine King, and Adrienne Mikolashek, accompany this motion.

The specific relief sought by this motion is dismissal of the complaint with prejudice.

Date:  May 15, 2008.

Respectfully submitted,

/S/ Carmen M. Banerjee
CARMEN M. BANERJEE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 307-6423
carmen.m.banerjee@usdoj.gov

Counsel for defendant
INTERNAL REVENUE SERVICE

Of Counsel:

JEFFREY A. TAYLOR
United States Attorney

3284456.1

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

EDUCAP, INC.,                                    )
                                                 )
         Plaintiff,                              )
                                                 )
    v.                                           )        NO. 1:07-cv-02106 RMC
                                                 )
INTERNAL REVENUE SERVICE                         )
1111 Constitution Avenue, N.W.                   )
Washington, DC 20224,                            )
                                                 )
         Defendant.                              )

## MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THE INTERNAL REVENUE SERVICE'S MOTION FOR SUMMARY JUDGMENT

This is a civil action in which EduCap, Inc., plaintiff, seeks injunctive relief under 26 U.S.C. § 7602(c) and under the Freedom of Information Act.

## STATEMENT OF FACTS

The Internal Revenue Service (the Service) incorporates by reference the facts enumerated in the Internal Revenue Service's Statement of Material Facts Not in Genuine Dispute.

## SUMMARY OF THE ARGUMENT

The relief EduCap seeks in its complaint can only be adjudicated under the Freedom of Information Act (FOIA). Suits brought under the FOIA are routinely resolved on summary judgment. *Manna v. United States Dep't of Justice*, 832 F. Supp. 866,

1

870 (1993), *aff'd* 51 F.3d 1158 (3rd Cir. 1995). The Service asserts that certain pages of documents responsive to EduCap's FOIA request are to be either partially or wholly withheld pursuant to 5 U.S.C. § 552(b)(3) (Exemption 3) in conjunction with sections 6103(a), 6103(e)(7), and 7602(c)(3)(B) of the Internal Revenue Code, and 5 U.S.C. § 552(b)(5) (Exemption 5) and 5 U.S.C. § 552(b)(7)(A) (Exemption 7(A)).

This Court lacks jurisdiction to review the Secretary's determination under 26 U.S.C. § 7602(c)(3)(B) to withhold the identity of third parties contacted during the Service's audit of EduCap's because: (1)the FOIA governs only requests for agency records, and an agency's response to such requests; (2) the Anti-Injunction Act and the Administrative Procedures Act foreclose judicial review of it; and (3) the tax laws do not provide a private right of action under section 7602(c)(3)(B). Furthermore, the Service asserts that declaratory judgment relief is inapplicable here.

Therefore, the Court ought to review under the FOIA's *de novo* standard, the Service's decision to not release records containing the information that identifies third party contacts.

The District Court lacks jurisdiction to review the Secretary's determination pursuant to the Freedom of Information Act (FOIA), the Anti-Injunction Act, the Administrative Procedures Act, and because the tax laws do not provide a private right of action under section 7602(c)(3) to challenge the Secretary's determination

3283014.1

ARGUMENT

I.   THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION TO ORDER THE SERVICE TO IDENTIFY EVERY THIRD PARTY CONTACT <u>MADE BY IT IN CONNECTION WITH ITS AUDIT OF EDUCAP.</u>

EduCap's first item of requested relief is for the Court to: "Order defendant IRS to identify every third party contact made by it in connection with its audit of EduCap." The Secretary of the Treasury's delegate determined, pursuant to 26 U.S.C. § 7602(c)(3)(B), not to release the identity of the third party contacts because they had expressed fear of reprisal. Several statutes prohibit the Court's jurisdiction to adjudicate the relief EduCap seeks under section 7602(c)(3).

A.   **EduCap brought Its Suit Under the FOIA Which Does Not Provide Relief for EduCap's First Item of Relief.**

Under the FOIA, agencies are required to provide records in response to a proper FOIA request. 5 U.S.C. § 552(a)(3)(A). Agencies are not required, however, to answer questions raised in the guise of a FOIA request or engage in doctrinal discussions in response to inquiries. *Hudgins v. IRS*, 620 F. Supp. 19 (D.D.C. 1985), *aff'd.*, 808 F. 2d 137 (D.C. Cir. 1987); *DiViao v. Kelley,* 571 F.2d 538, 542 (10th Cir. 1978) EduCap asserts that the Court has jurisdiction and venue under 5 U.S.C. § 552(a)(4)(B). (Compl. ¶¶ 2, 3) EduCap, however, requests as its first item for relief, that the Court "Order defendant IRS to identify every third party contact made by it in connection with its audit of EduCap." (Compl. ¶38(a)) This is a request to identify items and not a request for agency records. Therefore, EduCap's first requested item of relief is outside of the FOIA, and the Court does not have jurisdiction under 5 U.S.C. § 552(a)(4)(B) to

3

3283014.1

adjudicate it.

**B.**    <u>The Court's Jurisdiction Is Barred by the Anti-Injunction Act</u>

The Anti-Injunction Act prohibits judicial review of claims that would interfere with the administrative process of assessing or collecting taxes.  26 U.S.C. § 7421; *Bob Jones University v. Simon*, 416 U.S. 725, 736-737 (1974).  The Anti-Injunction Act Act provides, with exceptions that are inapplicable here: "...    no suit for the purpose of restraining the *assessment or collection of any tax* shall be maintained in any court by any person, whether or not such person is the person  against whom such tax was assessed."  26 U.S.C. § 7421 (emphasis added).  As the Supreme Court has held, the language of this statute "could scarcely be more explicit."  *Bob Jones University*, 416 U.S. 725, 736.  The primary purpose of the Anti-Injunction Act, is to facilitate the government's ability to assess and collect taxes quickly with "a minimum of preenforcement judicial interference."  *Bob Jones University*, 416 U.S. 725, 736; *Spencer*, 700 F. Supp. 601, 604 (D.D.C. 1988).  The Supreme Court's holding and rationale in *Bob Jones University* is consistent with its earlier recognition that "taxes are the life-blood of government."  *Bull v. United States*, 295 U.S. 247 259 (1935).

The Anti-Injunction Act protection against interference with tax collection interference is sufficiently broad to include judicial bar to pre-enforcement suits.  *Spencer*, 700 F. Supp. at 603.  The Service's investigation stage in its assessment and collection process, is included within this protection.  *Yamaha Motor Corp. v. United States of Am.*, 779 F. Supp. 610, 613 (D.D.C. 1991); *Crenshaw County Private School Found*

3283014.1

*v. Connally*, 343 F. Supp. 495 (M.D. Ala. 1972), *aff'd* 474 F.2d 1185 (5th Cir. 1973). Indeed,

the Anti-Injunction Act's protection against judicial involvement in pre-enforcement

activities includes "activities which are intended to, or may culminate in the assessment

of taxes." *Yamaha*, 779 F. Supp. 610, 613 (*citing Smith v. Rich*, 667 F.2d 1228, 1230 (5th Cir.

1982). The Service's issuance and enforcement of summonses under 26 U.S.C. § 7602 to

aid in its assessment or collection of taxes is such an activity. *Church of World Peace v.*

*I.R.S.*, 715 F.2d 492 (10th Cir. 1983). Similarly, third party contacts the Service makes

informally or through summons as during its investigation into a taxpayer's tax

liability, and its determination to not disclose these contacts, are activities that may

ultimately end in its assessment of taxes. Sections 7602(a), (c)(2), (c)(3) state, in relevant

part:

> (a) **Authority to Summon, etc.–** For the purpose of ascertaining the correctness of any return, making a return where none has been make, *determining the liability* of any person for an internal revenue tax ... or *collecting any such liability*, the Secretary is authorized- (1) To *examine* any books, papers, records, *or other data* which may be relevant or material to such inquiry."
>                    ******    ********
> (c) **Notice of contact of third parties.–**
> (2) NOTICE OF SPECIFIC CONTACTS.– The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the *determination or collection* of the *tax liability* of such taxpayer. Such record shall also be provided upon request of the taxpayer...
>      (3) EXCEPTIONS.– this subsection *shall* not apply--
>           (B) if the Secretary *determines* for good cause shown that .... such notice *may* involve reprisal against *any* person

26 U.S.C. § 7602(a), (c) (emphasis added). The language in sub-section 7602(c), the

provision governing when the Secretary shall not disclose the identity of the third party

contacts made- "*with respect to the determination or collection of the tax liability*," closely

resembles the language in the Anti-Injunction Act statute- "no suit for the purpose of restraining the *assessment or collection of any tax.*" Clearly, pre-enforcement determinations about third party contacts made under section 7602(c)(3)(B) are foreclosed from judicial review under the Anti-Injunction Act. The Supreme Court has held that a taxpayer's challenge to a tax liability should be brought to the court in the form of a suit for refund, as opposed to a premature injunction action. *Bob Jones University v. Simon*, 416 U.S. at 736. Therefore, judicial review of determinations the Secretary makes under sub-section 7602(c)(3)(B) are prohibited because it will interfere with the Service's pre-enforcement activities.

To sustain subject matter jurisdiction for the Court under the Anti-Injunction Act's exception, a plaintiff must show that: (1) it is clear that under no circumstances could the Government ultimately prevail; <u>and</u> (2) equity jurisdiction otherwise exists due to the threat of irreparable injury. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 ((1962); *Yamaha Motor Corp. v. United States of Am.*, 779 F. Supp. 610, 613 (D.D.C. 1991)). As to the equity jurisdiction element, the Supreme Court has analyzed: "The Act was written against the background of general equitable principles disfavoring the issuance of federal injunctions against taxes, absent clear proof that available remedies at law were inadequate" *Bob Jones University*, 416 U.S. 725, 743. As to the first element, it is fact specific, and moot if the equity jurisdiction prong is unmet.

The Court does not have subject matter jurisdiction to order the Service to disclose the identity of every third party it contacted during its audit of EduCap

6

because these contacts and the Service's determination to withhold their names, constitute pre-enforcement activities protected from adjudication by the Anti-Injunction Act. The Anti-Injunction Act protects the Service's determination pertaining to its non-disclosure of third party contacts during the EduCap audit from judicial restraint because they involve pre-enforcement activities At the time EduCap made its FOIA request and as of the date of this writing, the Service had not finished its examination of EduCap; the audit is on-going. (Bruce Decl. ¶ 3; Philipson Decl. ¶ 3.) Accordingly, the examination is a pre-assessment stage of deciding whether any tax liability should be assessed against EduCap. (Philipson Decl. ¶ 6.) The Court acquire jurisdiction at this stage of the administrative process. Only after EduCap has exhausted the Service's administrative appeals can it seek judicial review. *Bob Jones University*, 416 U.S. at 725.

The two-prong exception to the Anti-Injunction Act is inapplicable here. First, EduCap cannot possibly claim that the Service cannot sustain an assessment of tax liability on the merits. The Service's audit of EduCap is ongoing. (Bruce Decl. ¶ 3; Philipson Decl. ¶ 3.) The Service has not determined whether it will assess taxes against EduCap or in what amount. (Philipson Decl. ¶ 6.) Second, EduCap will not suffer irreparable harm warranting the Court's equity jurisdiction; it merely must await the Service's determination as to any possible tax liability.[1]

---

[1] This assertion is not a suggestion by the Service that it will or will not assess taxes against EduCap and/or that EduCap will succeed in obtaining a ruling ordering the Service to disclose its third party contacts in the context of a refund suit. Additionally, the Service does not have an administrative appeal process for the Secretary's determination under 26 U.S.C. § 7602(c)(3)(B).

3283014.1

Judicial review of the Service's determination under section 7602(c)(3)(B) to not disclose certain third party contacts to EduCap, will interfere with the Service's activities that may culminate in the assessment and/or collection of taxes from EduCap. Moreover, the exception to the Anti-Injunction Act does not remotely apply here. Therefore, the Anti-Injunction Act forecloses the Court's review of plaintiff's request that the Court order the Service to disclose all the third party contacts it made during its audit.

### C.    The Court's Jurisdiction Is Barred Under the Administrative Procedures Act.

Given the jurisdictional bar of the Anti-Injunction Act, the only theoretically possible source for EduCap's injunctive relief is the Administrative Procedures Act. *See e.g., Yamaha Motor Corp. v. United States of Am.,* 779 F. Supp. 610, 612 (D.D.C. 1991)(discussing the APA's prohibition of jurisdiction when another statute forbids it.) If either the Act or the Declaratory Judgment Act apply, however, then the APA also forecloses the court's jurisdiction). *Id.* Specifically, the APA forecloses the Court's jurisdiction because it does not allow judicial review when another statute forbids such review.  5 U.S.C. §701(a)(1) (the APA does not apply, "to the extent that ... statutes preclude judicial review.")  Courts have held that section 702(a)(1) excludes from APA jurisdiction cases where review is prohibited by either the Anti-Injunction Act or the tax exception to the Declaratory Judgment Act (28 U S C §2201).  *See also Yamaha* 779 F. Supp. 610.  (*See Part* III, *infra.*)

Section 702 of the APA contains two additional provisions prohibiting APA

8

jurisdiction over suits barred the Anti-Injunction Act. 5 U.S.C. §702(1), (2); *Yamaha Motor Corp. v. United States of Am.*, 779 F. Supp. 610, 612. Section 702(1) provides that nothing in the APA, "affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702(2). Additionally, section 702(2) states that nothing in the APA, "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* The Court of Appeals for the District of Columbia affirmed the District Court's dismissal of a taxpayer's attempt to bring an APA suit against the Service, where that action was barred by the Anti-Injunction Act, pursuant to section 702(2). *Hudgins v. Internal Revenue Service*, 54 A.F.T.R.2d 6408 (D.D.C. 1984), *aff'd without opinion*, 764 F.2d 926 (D. C Cir 1985).

Because this action is barred by the Anti-Injunction Act, the Court lacks subject matter jurisdiction under the APA to adjudicate EduCap's section 7602(c) claim. *(See* Part I.B, *supra* for discussion of relevant law and facts.

D.    **The Court's Jurisdiction is Inappropriate Because the Internal Revenue Code Does Not Offer EduCap Any Remedies of Injunctive or any Other Relief as to the Service's Determination to Not Release the Identity of the Third Party Contacts.**

Congress did not provide taxpayers a private cause of action under sub-section 7602(c)(3). Section 7602(c) was added to the Internal Revenue Code during the enactment of the "Internal Revenue Service Restructuring & Reform Act of 1998." H.R. Rep. No. 105-599, 105th Cong. 2d Sess. (House-Senate Conference Committee Report

3283014.1

June 24, 1998); 2676, 105th Cong., 2nd Sess. (adopted version of bill, July 22, 1998). The Restructuring &Reform Act was enacted in, in part, to provide taxpayers with certain protections and rights during the process of the collection of taxes. H.R. Conf. Rep, No. 105-599, 105th Cong. 2nd Sess. pp. H5304-07, H5352-68 (House agreement to the Conference Report on H.R. 2676, June 25, 1998).

Given Congress' overall intent behind the Internal Revenue Restructuring & Reform Act of 1998, and its addition of section 7602(c), it appears that Congress purposely excluded a mechanism for taxpayers to challenge the Secretary's determination to not provide a record of certain third party contacts. The secretary has the authority to determine to withhold a record of contacts it has made during an audit based on the factors in section 7602(c)(3). In relevant part, if the Secretary determines, based on good cause, that disclosure of the third party contacts "may involve reprisal", the requirement that it provide a record of the contacts "shall" not apply. 26 U.S.C. § 7602(c)(2), (3)(B). *(See infra,* for the statute's text.) Section 7602(c)(1)), related to EduCap's first item of relief, requires that the Service provide a taxpayer with notification prior to examining or summoning third parties in connection with the Service's audit of the taxpayer. 26 U.S.C. § 7602. Congress, under section 7609 of the Internal Revenue Code, gave taxpayers the right to quash summonses the Service has issued to third parties pursuant to section 7602(a), if the Service has failed to comply with the procedural requirements under sub-section 7602(c)(1), (c)(2). Accordingly, there is abundant case law where the issue is whether the Service complied with the

10

3283014.1

procedure to provide notice to a taxpayer before issuing summonses to third party contacts. *See e.g. United States v. Jillson*, 1999 WL 1249414 (S.D. Fla. 1999) (where the court quashed the Service's summons served on third parties for its non-compliance of the administrative requirements under section 7602 (c)(2)).

Congress, however, included no remedy in the Internal Revenue Code to challenge the Service's determination that providing a taxpayer with a record of the third parties contacted either informally or through a summons may result in reprisal against any person. Congress apparently chose to not provide taxpayers with a remedy that would interfere with the Service's taxpayer audits. Congress clearly knew how provide such a remedy-it provided taxpayers with a cause of action, in section 7609, if the Service fails to provide the pre-contact notification to taxpayers of third-party summonses required under section 7602(c)(1).

Congress' apparent choice not to give taxpayers an avenue for review of the Service's determination made under section 7602(c)(3)(B) appears to be consistent with its judicial non-interference mandates in the Anti-Injunction Act and the APA. Moreover, it has been recognized that plaintiffs do not have a private right of action under section 7602(c). *Berger v. Internal Revenue Svc.*, 487 F. Supp. 2d 482, 506 (D.N.J. 2007) (where, before dismissing the section 7602(c) count, the court, stated: "Plaintiffs concede that [section 7602(c) and other counts] do not allow them a private right of action.")

EduCap is not entitled to the relief it seeks under 26 U.S.C. § 7602(c) because the

3283014.1

Internal Revenue Code does not provide a remedy for this claim.

II.    THE SERVICE CONDUCTED AN ADEQUATE SEARCH OF ITS RECORDS IN RESPONSE TO EDUCAP'S FOIA REQUEST AND PROPERLY WITHHELD INFORMATION UNDER THE FOIA.

EduCap's second item of relief requests the Court:  "Order defendant IRS to produce complete and unredacted copies of all materials related to such third party contacts, including all materials requested in EduCap's June 1, 2007 request."  (Compl. ¶38(b)).  The Court should grant the Service's motion for summary judgment as to this relief because the material undisputed facts show that the Service:  (1) performed an adequate search of its records in response to Plaintiff's Freedom of Information Act (FOIA) request for records and (2) properly withheld in whole or in part pages pursuant to the several exemptions from disclosure under the FOIA. See 5 U.S.C.§ 552(b).[2]

A.    The Internal Revenue Service Performed a Good-Faith Search Reasonably Calculated to Uncover All Records Responsive to EduCap's Request.

An agency must establish that it executed a search "reasonably calculated to uncover all relevant documents" in response to a FOIA request. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II")); *accord, Shores v. FBI,*

---

[2] While EduCap did not request declaratory judgment relief, it referenced the Declaratory Judgment Act at the outset of its complaint. (Compl. ¶2). To the extent the Court interprets EduCap's second item of relief as declaratory relief beyond the parameters of the FOIA, the Service asserts that the Court's jurisdiction is barred under the Declaratory Judgment Act. *See supra* ,Part I.B and *infra* Part III

185 F.Supp.2d 77, 82 (D.D.C. 2002); *Judicial Watch, Inc. v. Export-Import Bank*, 108

F.Supp.2d 19, 25 (D.D.C. 2000); *Fazzini v. U.S. Dept. of Justice*, 1991 WL 74649 at *3 (N.D.

Ill. 1991). The focus is on whether the agency 's search for the records plaintiff

requested was adequate rather than on the results the search produced. *Becker v.*

*Internal Revenue Service*, 34 F.3d 398, 406 (7th Cir. 1994).

Reasonableness is the standard by which the adequacy of an agency's search for

records is judged. *Becker*, 34 F.3d 398, 405 ; *Steinberg v. United States Dep't of Justice*, 23

F.3d 548, 551 (D.C. Cir. 1994); *Miller v. Dep't of State*, 779 F.2d 1378, 1383, 1384-1385 (8th

Cir. 1985); *see also, Meeropol v. Meese*, 790 F.2d 942, 952-53, 955 (D.C. Cir. 1986). An

agency's reasonableness depends on the facts of each case. *Steinberg*, 23 F.3d at 551. A

search is not inadequate simply because it does not locate every document a requester

seeks. *See e.g., Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) (agency not

required to look beyond the four corners of the request for leads to responsive

documents); *Steinberg*, 23 F.3d at 552 (holding that the FOIA does not impose a

requirement to follow an endless trail of cross references found in responsive

documents); *Church of Scientology v. IRS*, 792 F.2d 146 (D.C. Cir. 1986) (the court held

that the Service was not required to search its files in all its regional and district offices

for the documents requested); *Meeropol*, 790 F.2d at 953 (it is unreasonable to expect

"even the most exhaustive search to uncover *every* responsive file ...") (emphasis

supplied in original).

Federal agencies responding to FOIA requests for records are required to use

3283014.1

search methods which can reasonably be expected to yield the information requested. *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993); *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *See also Oglesby v. Dep't of Commerce*, 920 F.2d 57, 68 (DC Cir. 1990); *Judicial Watch*, 2006 WL 1793297 (D.D.C. 2006).

The agency can sustain its burden of establishing a reasonable search by means of reasonably detailed, nonconclusory affidavits or declarations submitted in good faith. *Becker*, 34 F.3d 398, 405; *Steinberg*, 23 F.3d at 551; *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The Service used search methods reasonably expected to uncover records responsive to EduCap's's request. The Integrated Data Retrieval System (IDRS) is the Service's primary resource for searching taxpayers' current account information. (Young Decl. ¶ 6; Bruce Decl ¶ 9.) Young is a Disclosure Specialist with the Atlanta, Georgia Disclosure Office of the Service, whose duties are to process FOIA requests and requests for return and return information. (Young Decl. ¶ 1.) She processed the FOIA request EduCap made through its counsel dated June 1, 2007. (Young Decl. ¶¶ 2, 3). EduCap requested contacts the Service made to third parties-parties other than EduCap, Inc. (Young Decl. ¶ 3.) Specifically EduCap asked for: The identity of all such parties contacted by the IRS in connection with the audit of EduCap and the dates of such

14

contacts; all notes, recordings, transcripts, summaries or any other documents that reflect or consist of testimony or oral statements to the IRS by persons the IRS identifies pursuant to paragraph 1 above other than Catherine Reynolds, Wayne Reynolds, , Matthew Murray or Paula Darling; and any documents or other written or electronic materials provided to the IRS by person the IRS identifies pursuant to paragraph 1 above other than Catherine Reynolds, Wayne Reynolds, Matthew Murray, Paula Darling or EduCap. (Young Decl. ¶ 3(a)-(c).)

Young sent Bruce a search memorandum with a copy of the FOIA request on or about July 16, 2007, in which Young asked Bruce to conduct a search of her paper and electronic files for responsive documents. (Young Decl. ¶ 5.) Young met with Bruce on or about July 19, 2007 to discuss EduCap's FOIA request and ascertain whether Bruce had any records responsive to it. (Bruce Decl. ¶ 11; Young ¶ 6.) Shortly after this meeting, Bruce sent Young approximately 70 pages responsive to EduCap's request, including a third party contact list. (Young Decl 7; Bruce ¶ 10.) Young also conferred with Hardy while processing the request. (Mikolashek Decl. ¶ 10.) On August 16, 2007, Young responded to EduCap's FOIA request and provided it with the documents she deemed responsive to the request. (Young Decl. ¶8.)

Maureen Hardy is Third Party Contact Coordinator. (Hardy Decl. ¶ 5; Bruce Decl. ¶ 9) Third party contacts are entered into the Third Party database on the IDRS by Maureen Hardy who does so from information she obtains from Forms 12175, which the revenue agents complete for each interview they conduct. (Bruce Decl¶ 9; Hardy

Decl. ¶ 2.)  When contacts have expressed a fear of reprisal at the time they are

interviewed, the agent omits their names from the form, and instead marks the reprisal

item on the form. (Bruce Decl. ¶ 6.)  Bruce spoke to 28 individuals during the course of

the Service's audit of EduCap, and spoke to some individuals more than once; 19 of

them stated they feared reprisal. (Bruce Decl. ¶ 8; Philipson Decl. ¶6.)  Bruce completed

a form each time a person was contacted. (Bruce Decl. ¶¶ 8, 9.)

    The Service conducted a second search responsive to EduCap's FOIA request

when it commenced the instant action. (Mikolashek Decl.¶ 8.)  Adrienne Mikolashek,

the attorney at the Office of Chief Counsel of the Service assigned to assist in the

defense of this suit, coordinated the search. (Mikolashek Decl.¶¶ 1, 8.)  Mikolashek

conferred with Bruce and asked her to conduct a search of her paper and electronic files,

and to direct other revenue agents to do the same. (Mikolashek Decl. ¶ 9.)  Mikolashek

also conferred with Hardy and asked her to search her records, ( Mikolashek ¶¶ 10, 11.),

and with Young, the Disclosure Specialist. (Mikolashek Decl. ¶ 12.)  Mikolashek

reviewed all the responsive records she received based upon her conferences, and

determined that: The Service located 986 pages of material responsive to EduCap's

FOIA request, which are the subject of this litigation; it has decided to re-release 23

pages (pages 1-17, and 20-25) that were previously redacted and 2 pages (pages 18-19)

with revised redactions. (Mikolashek Decl. ¶ 16.)  The Service has also released 40

pages (pages 26, 28-29, and 32 -68) in full and 3 pages (pages 27 and 30-31) in part.

Additionally, the Service's counsel expects to release the Forms 12175 that were actually

3283014.1

completed as it deems these pages responsive to the request y no later than May 19, 2008; and page # 27, which was inadvertently omitted from the package Banerjee sent on May 7th, will also be sent by this time. (Banerjee Decl. ¶4) The remaining 877 pages are being withheld in their entirety. (Mikolashek Decl. ¶ 16)

On May 7, 2008, the Service provided EduCap with 67 pages obtained as a result of Mikolashek's review; they bear control numbers 1-25, 27-31, 32-63, 64-65, and 66-68. (Banerjee Decl. ¶ 2, Ex. A.) Pages 1-25 represent pages the Service's Disclosure Specialist previously provided EduCap in August 2007 in response to EduCap's request. (Banerjee Decl. Ex. A.) The Service re-released the 25 pages and released in full 23 of those 25 pages. *Id* Mikolashek determined that additional documents that Young had located were also responsive to EduCap's request. (Mikolashek Decl. ¶ 8.) She determined to release these in response to EduCap's FOIA request; they consist of pages bearing control numbers 0032-0063 and 0066-0068, which are being released in full, and pages bearing 0027-0031 and 0064-0065, which are being releasing in part. (Banerjee Decl. ¶¶ 2, 3; Ex. A.) *(See supra,* Part II.B (discussion on the documents withheld.)

**B.    The Information the Service Withheld from Disclosure Is Exempt from Disclosure Pursuant to the FOIA Exemption Allowing Application of Non-FOIA Non-Disclosure Statutes.**

Section 552(b)(3) of the FOIA exempts disclosure under sections 6103 and 7602(c)(3)(B) of the Internal Revenue Code.  Exemption 3 of the FOIA protects from disclosure information which is:

3283014.1

Specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Under this exemption, if the Court determines that a relevant statute exists and that any of the withheld information is within the statute's coverage, the material must be withheld no matter how unwise or self-protective the statute may seem. *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 868 n.29 (D.C. Cir. 1981); *Goland v. CIA*, 607 F.2d 339, 350 n.65 (D.C. Cir. 1978) (sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage).

The three main types of documents being withheld in part or in full are : (1) handwritten and typed notes authored by revenue agents reflecting statements made by third parties during an interview about EduCap; (2) documents supplied to the Service by the third parties interviewed, and a list of third party contacts. (Mikolashek Decl. ¶18, 21.)

1. *Section 6103(e)(7) Prohibits Disclosure of Information That Jeopardizes Tax Administration.*

Congress has provided in 26 U.S.C. § 6103(a) that tax return information generally may not be disclosed. It further provided in 26 U.S.C. § 6103(e)(7) that a taxpayer may inspect his or her own tax return information only if the Secretary of the Treasury or his delegate determines that such disclosure would not seriously impair

3283014.1

Federal tax administration. Section 6103(e)(7) qualifies as a non-disclosure statute under the FOIA, provided that the Service can show that the information withheld is: (1) return information; and (2) disclosure of the information would seriously impair federal tax administration. *Currie v. I.R.S., 704 F.3d* 523, 531 (11th Cir. 1983); *Radcliffe v. I.R.S.* 536 F. Supp. 423, 435 (S.D.N.Y. 2008). If the Secretary's delegate has determined the opposite – that disclosure would seriously impair tax administration – Congress has statutorily provided that the return information may not be disclosed. *See e.g. McQueen v. United States*, 264 F. Supp. 2d 502, 516 (S.D. Tex 2003).

The pages of notes the revenue agent took while interviewing third party contacts during its audit of EduCap are to be withheld in part or in full because they contain information that is exempt from disclosure pursuant to Exemption (b)(3) in conjunction with 6103(e)(7). These records bear control numbers 69-282 and 27, 30, and 31. (Mikolashek Decl. ¶19.) The revenue agent created these records in connection with the Service's attempt to determine whether to assess any liability against EduCap under the tax laws. (Mikolashek Decl. ¶¶11, 19(c); Bruce Decl. ¶15.) The third party contacts who provided information to the revenue agents did so only after expressing a desire for their names to remain confidential (Mikolashek Decl.¶19), and implicitly the information they supplied is to be treated confidentially. Indeed, 19 individuals expressly stated they wanted their names withheld, and another individual stated that he or she did not object to his name being disclosed, but wanted the statements he or she made kept confidential. (Mikolashek Decl.¶19; Philipson Decl. ¶6.)

3283014.1

The Service asserts that the documents a third party contact gave to the revenue agent during an interview during the Service's audit of EduCap are to be withheld in pursuant to exemption (b)(3) in conjunction with section 6103(e)(7). These records bear control numbers 283 -945 (Mikolashek Decl.¶20.) The person who provided the documents held a unique position in EduCap with access to a combination of information that, if described, would allow EduCap to narrow the list of potential sources of the information with greater accuracy and compromise the third party's identity. *(Id.)* The third party has expressed a fear of reprisal *(Id.)* Bruce Philipson is a supervisory revenue agent. (Philipson Decl. ¶ 2.) His duties and responsibilities include planning, directing, and coordinating the work of revenue agents engaged in the conduct of investigations of varying levels of difficulty and complexity concerning exempt organization. *Id.* Philipson has the delegated authority, through Delegation Order 11, to determine whether an agency record is exempt from disclosure of under section 6103(e)(7). (Philipson Decl. ¶5.)

Given the apprehension expressed by these third parties, and the fact that the Service's investigation is not complete, the Secretary has determined that the disclosure of the information in the interview notes will seriously impair federal tax administration. Clearly, the release of the information in the notes and in the documents the contact provided the revenue agent will have chilling effect on the availability of important sources of information about EduCap.

3283014.1

2.    *Third Party Contact Information Is Properly Withheld Under Sub-Section 7602(c)(3)(B).*

The application of section 7602(c)(3)(B) within the exemption (3) umbrella appears to be one of first impression. Courts, however, have historically held that several provisions of the Internal Revenue Code constitute non-disclosure provisions that fall under exemption (b)(3). *See e.g. Currie v. I.R.S.*, 704 F.3d 523, 531 (11th Cir. 1983) (adjudicating 26 U.S.C. § 6103(e)(7) in conjunction with Exemption 3); *Church of Scientology of California v. IRS*, 792F.2d 146, 149-150 (D.C. Cir. 1986) (adjudicating 26 U.S.C. § 6103(a) in conjunction with Exemption 3). The decision to not disclose information pursuant to section 7602(c)(3), like section 6103(e)(7), is based upon the Secretary's determination. Similarly, the Service contends, section 7602(c)(3) operates as a non-disclosure statute permitting the non- disclosure of third party contact information to a taxpayer when one or more of the circumstances set forth in section 7602(c)(3)(A)-(C) apply.

Section 7602(c) provides that the Service may not contact a third party without giving the taxpayer advanced notice. 26 U.S.C. § 7602(c)(2). It requires the Service subsequently to supply taxpayers a record of third party contacts it has made. *Id.* However, section 7602(c)(3)(B) and the regulations provide an exception to this general rule, stating that neither advance notice nor providing a record of the contacts is required when such notice might result in reprisal. Specifically, section 7602(c)(3)(B) states in relevant part:

(C) NOTICE OF CONTACT OF THIRD PARTIES.–

3283014.1

(2) NOTICE OF SPECIFIC CONTACTS.– The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the *determination* or collection of the *tax liability* of such taxpayer. Such record shall also be provided upon request of the taxpayer...

(3) EXCEPTIONS.– this subsection *shall* not apply--

    (B) if the Secretary *determines* for good cause shown that .... such notice *may* involve reprisal against *any* person

26 U.S.C. § 7602(c)(2), (c)(3)(emphasis added). Congress' use of the mandatory word "shall" rather than the permissive "may" infers that the Service has no discretion in releasing the third party contacts if it detects its disclosure may involve reprisal. The words "may involve" connotes a broad range of possibilities of reprisal and no need of direct evidence of reprisal. The Treasury promulgated a regulation that implements and interprets section 7602(c)(3):

> A statement by the person contacted that harm may occur against any person is sufficient to constitute good cause for the IRS employee to believe that reprisal may occur. The IRS employee is not required to further question the contacted person about reprisal or otherwise make further inquiries regarding the statement.

28 C.F.R. § 301.7602-2(f)(3).

The revenue agents 'notes taken during their interviews of third party contacts, and the documents one of these contacts provided to the agent, are exempt from disclosure pursuant to exemption 3 in conjunction with 26 U.S.C. § 7602(c)(3)(B). (For a detailed description of the documents, see *supra* Part II.B.1). Pages 69 through 85 and 136 through 282 are notes of the interviews of contacts who expressed fear of reprisal and asked that their identities not be released. (Mikolashek Decl.¶19(a)) Accordingly, the Secretary determined that good cause existed showing reprisal and decided not to

3283014.1

provide EduCap with a record of all third party contacts.[3] The information in the notes contain facts the release of which would be tantamount to releasing their names. (Mikolashek Decl.¶19(a)  The third parties with whom the revenue agents spoke all had personal knowledge of EduCap's operations, many of them as former employees. (Mikolashek Decl. ¶19(a)  At the time of the interview, some of these contacts still worked in the same industry as EduCap and believed EduCap and its managers had influence in it.  (Id.) Each page of notes contains sufficient unique information and knowledge of the interviewee about EduCap such that their release would allow EduCap to deduct the identity of the individual.  (Id.)

Similarly, the documents  provided by one of the contacts is also exempt from disclosure.  This contact, who expressed fear of reprisal, held a unique position in EduCap with access to a combination of information that, if described would allow EduCap to narrow the list of potential sources of the information.  (Mikolashek Decl. ¶20.)  For these, and the additional reasons stated in the immediately preceding paragraph, the documents from the contact are exempt from disclosure under subsection 7602(c)(3)(B).

### 3.    Section 6103(a) Prohibits Disclosure of Taxpayer Return Information.

Section 6103(a) mandates that tax return information be held confidential subject

---

[3]The Service points out that the Service released the identity of contacts who did not express fear of reprisal in response to the original FOIA request and on May 7, 2008. (See Banerjee Decl. ¶2, Ex. A.)

3283014.1

to a number of strictly construed exemptions. *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9 (1987); *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir. 1979), it has been held to be a statute falling within the of Exemption 3. *Church of Scientology of California v. Internal Revenue Service*, 792 F.2d 146, 149-150 (D.C. Cir. 1986). Return information is broadly defined :

> a taxpayer's *identity* ...or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence of liability ... of any person under this title ....

26 U.S.C. § 6103(b)(2)(A)(emphasis added).

Section 6103(a), in conjunction with exemption (b)(3) applies to withhold part of a page of interview notes (page # 31) and a list of taxpayer names (pages #18, 19). and another interview note (page # 27). (Mikolashek Decl. ¶¶19, 19(a), 21, 21(a).) On pages # 18 and 27 the Service withheld a social security number of an individual.[4] (*Id.*) The Service is prohibited from disclosing all information that directly or indirectly identifies third party taxpayers pursuant to 26 U.S.C. §§ 6103(a), (b)(2)(A). The Service's decision to withhold the return information on pages 18, 19, and 27 is consistent with the holding of the Court of Appeals for the District of Columbia in *Church of Scientology of California v. Internal Revenue Service*, 792 F.2d 146, 149-150 (D.C. Cir. 1986); *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9 (1987).

---

[4]The Service states that pages 18 and 19 are withheld in part even though only information on page 18 is being withheld because both pages together make up one document entitled "List of 3rd Party Contacts FOIA Request."

3283014.1

The pages that were released to EduCap in part and in full are not attached to any of the declarations so as not to disclose the taxpayer information of EduCap and/or of individual third party taxpayers.[5]

### 4. Sub-Section 552(b)(5) Exempts Records Containing Deliberative and Pre-decisional Agency Information.

Section 552(b)(5) protects from disclosure under the FOIA "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As the language suggests, exemption 5 incorporates those privileges which the government enjoys in pretrial discovery under relevant statutes and case law.  *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984); *see also, NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975) ("Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency.").

The governmental deliberative process privilege is one of the privileges covered by exemption 5. See *Sears, Roebuck & Co.*, 421 U.S. at 150; *EPA v. Mink*, 410 U.S. 73, 87 (1973); *Tax Analysts v. Internal Revenue Service*, 294 F.3d 71, 76 (D.C. Cir. 2002).  The privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (*quoting Carl Zeiss_Stiftung v. V.E.B. Carl Zeisee, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  It also protects other

---

[5]Upon the Court's request, however, the Service will provide it the redacted and unredacted version of the relevant pages for *in camera* inspection.

subjective documents reflecting the author's personal opinions prior to agency adoption of a policy. *Judicial Watch, Inc. v. DOJ*, 306 F Supp.2d 58, 70 (D.D.C. 2004) (where the court found that handwritten notes a member of the Attorney General's staff made on an invitation were exempt from disclosure because they would reveal the factor that the staff member considered important, and how the decision to attend the event may have been reached). *See also Tax Analysts*, 294 F.3d at 80 (D.C. Cir. 2002) (where the court affirmed the lower court's decision to withhold from disclosure five Technical Assistance memoranda).

Disclosure of such documents could inhibit "'frank discussion of legal or policy matters'" leading to weaker decisions and policies. *Sears, Roebuck & Co.*, 421 U.S. at 150; *see also, Mink*, 470 U.S. at 87; *Tax Analysts*, 294 F.3d at 80. In determining whether the governmental deliberative process privilege protects a particular document, that document must be both pre-decisional and deliberative in nature. *Mapother v. Department of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Judicial Watch, Inc.*, 108 F.Supp.2d at 35.

The Service asserts that portions of two pages of interview notes contain information that is pre-decisional and deliberative, and therefore exempt from disclosure pursuant to exemption 5. Specifically, pages bearing control numbers 30 and 31 are typed notes of a third party interview dated August 9, 2006. The information redacted, specifically from page # 30, consists of the revenue agent's mental impressions regarding a statement made by the individual. (Mikolashek Decl. ¶ 18(e).)

26

3283014.1

The audit team uses the agents' notes to aid them in making determinations about whether the taxpayer will be liable for any taxes, for example. (Philipson Decl. ¶ 6(a).) The examination of EduCap, for which the interview was conducted, is ongoing such that no determination as to whether EduCap will be assessed any tax liability has been reached. ((Philipson Decl. ¶ 6; Bruce Decl. ¶3.) The examination is clearly at the deliberative stage as the information reflects the author's personal opinion before the Service has taken final action. The status of the examination as ongoing means that any mental impressions might reflect mere recommendations. The Service's assertion to withhold the agents' notes on page # 30 is consistent with the holding in *Judicial Watch,* 306 F Supp.2d at 70.

### 5.   *Section 552(b)(7)(A) Exempts Records Pertaining to Pending Investigations.*

It is clear that documents compiled in investigations or proceedings in the civil or criminal context are within the meaning of "records or information compiled for law enforcement purposes" under FOIA's exemption 7.   *See Williams v. IRS,* 345 F. Supp. 591, 593 (D. Del. 1972), *aff'd,* 479 F.2d 317, 318 (3d Cir. 1973) (civil context, involving audit); *Barney v. IRS,* 618 F.2d 1268, 1273 (8th Cir. 1980) (criminal context, involving investigation); *White v. IRS,* 707 F.2d 897, 901 (6th Cir. 1983) (civil and criminal context); *B & C Tire Co. v. IRS,* 376 F. Supp. 708, 713 n.11 (N.D. Ala. 1974).   In *B & C Tire,* the court specifically rejected a taxpayer's contention that a civil audit of its taxes was not a "law enforcement proceeding."   *B & C Tire,* 376 F. Supp. at 713.   Therefore, the Service has the requisite law enforcement mandate to qualify as a law enforcement agency. *Lewis v.*

3283014.1

*IRS,* 823 F.2d 375, 379 (9th Cir. 1987).

The Service must then prove a law enforcement purpose for its compilation of information in order to justify its withholding of such information under exemption 7 *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989), *reh'g denied,* 493 U.S. 1064 (1990). Since the 1986 amendments to the FOIA, the District of Columbia Circuit has held that in order to invoke exemption 7, the agency need merely establish a nexus "between [its] activity" (not a particular investigation) "and its law enforcement duties." *Keys v. Department of Justice,* 830 F.2d 337, 340 (D.C. Cir. 1987). Exemption 7(A) states:

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings...

5 U.S.C. § 552(b)(7)(A).

Information on the revenue agents' interview notes are exempt from disclosure under exemption 7(A) because EduCap's audit is not completed. As of the date of this writing, the Service had not finished its examination of EduCap; the audit is on-going. (Bruce Decl. ¶3; Philipson Decl. ¶3; Mikolashek Decl. ¶¶ 19, 19(a).) Accordingly, the examination is at an investigatory stage of assessing whether any tax liability should be assessed against EduCap. (Philipson Decl. ¶6.) Disclosure of the information contained in these notes can hamper the Service's progress in the audit, and is likely to discourage those interviewed to continue participating in the audit and/or discourage future third party contacts from volunteering relevant information to the Service.

### III. To the Extent EduCap Seeks Declaratory Judgment Relief as to its First Item for Relief, the Court Does Not Have Subject Matter Jurisdiction Over It.

EduCap is not entitled to declaratory judgment relief because: (1) it did not request declaratory judgment as a form of relief; and (2) even, if it had requested it, the Declaratory Judgment Act (DJ Act) does not confer subject matter jurisdiction to the Court.

### A.   The Court Lacks Jurisdiction Because EduCap Failed to Request Relief Under the Declaratory Judgment Act.

EduCap is not entitled to declaratory judgment relief because it did request such relief in its complaint. But even were EduCap to ask to amend its complaint to seek declaratory relief, such an effort would be unavailing.

### B.   The Court Lacks Subject Matter Jurisdiction Under the DJ Act.

The Declaratory Judgment Act expressly prohibits federal courts subject matter jurisdiction over federal tax matters. The Declaratory Judgment Act is set forth in 28 U.S.C. § 2201, which states, in relevant part:

> **(a)** In a case or controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under 505 or 1146 of title 11, or in any civil action ,,, as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect

29

of a final judgment or decree and shall be reviewable as such.

********

28 U.S.C. §§ 2201, 2202. The DJ Act prohibits jurisdiction with respect to federal tax matters unless the action relates to the status and classification of EduCap as an exempt organization.

The scope of the Declaratory Judgment Act is "coterminous" with the scope of the AI Act. *Investment Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979)(held that he bar of the tax exception to the Declaratory Judgment Act is co-terminous with the bar of the AI Act and the court did not have jurisdiction even if no other forms of relief were available). The Supreme Court has held that the Declaratory Judgment Act's "Federal taxes" exception is as broad in scope as the AI Act's protection against tax collection interference. *Alexander v. "Americans United," Inc.*, 416 U.S. 752, 759 (1974).

The Declaratory Judgment Act forecloses the Court's subject matter jurisdiction to adjudicate EduCap's cause of action under section 7602(c)(3) because it is co-terminous with the Anti-Injunction Act Act, which forbids judicial interference with pre-enforcement activities. ( See *supra*, Part I.B (discussion of the Anti-Injunction Act Act's application to EduCap's first form of relief.)

30

3283014.1

CONCLUSION

For the reasons stated above, this Court does not have subject matter jurisdiction over EduCap's relief requesting the Court to order the Service to identify third party contacts, which the Service determined not to disclose in responding to EduCap's FOIA request. The Internal Revenue Service's search for records responsive to EduCap's FOIA request was adequate, and its partial withholdings justified. Accordingly, based upon the undisputed facts, the Service is entitled to judgment as a matter of law.

Respectfully submitted

*/S/ Carmen M. Banerjee*

CARMEN M. BANERJEE
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 307-6423
Carmen.M.Banerjee@usdoj.gov

Counsel for defendant
INTERNAL REVENUE SERVICE

Of Counsel:

JEFFREY A. TAYLOR
United States Attorney

3283014.1